### In re NESHAMINY OFFICE BUILDING ASSOCIATES.

Civ. A. Nos. 85–0328, 85–1104.

United States District Court,
E.D. Pennsylvania.

June 24, 1986.

---

Leonard M. Klehr, Philadelphia, Pa., for appellant.

Nathan Lavine, Gary D. Bressler, Mark J. Packel, Philadelphia, Pa., for appellee (Neshaminy Plaza Associates).

## MEMORANDUM

NEWCOMER, District Judge.

Before me here are two related appeals from decisions of the Bankruptcy Court, which approved the settlement of a claim of two bankrupt estates by the trustee. Some limited partners of one of the entities in bankruptcy objected to the settlement,

and now challenge the propriety of that approval, as well as the inclusion of certain items in the record on appeal. For the reasons stated below, I conclude that approval of the settlement was in error, and so I will vacate that decision, and remand for further proceedings.

## I. *Facts*

The facts briefly are as follows. In later 1979, Fidelity America Mortgage Company ("FAMCO") and Neshaminy Plaza Associates ("NPA") entered into an installment sales agreement whereby NPA sold to FAMCO two office buildings and the land on which the buildings are situated, known as Neshaminy Plaza. The same day, FAMCO sold the buildings and leased the land to Neshaminy Office Building Associates ("NOBA"), a limited partnership of which FAMCO is the general partner. After FAMCO made a few payments to NPA pursuant to the installments sales agreement, FAMCO defaulted. NPA then repossessed the property, declared the agreement terminated by reason of the default, and instituted an action in ejectment by warrant of attorney in the Court of Common Pleas of Montgomery County.

Subsequently, in February 1981, FAMCO and NOBA each filed a petition for reorganization under Chapter 11 of the bankruptcy code. In May 1981, FAMCO and NOBA filed with the Bankruptcy Court an application for clarification of the automatic stay provision of the bankruptcy code, 11 U.S.C. § 362. In that application, FAMCO and NOBA sought a determination that Neshaminy Plaza was included in the bankrupt estates, and thus that NPA was barred from reconveying the property outside of the bankruptcy process. The application raised the issues of whether there was in fact a default on the installment sales agreement by FAMCO, whether there was a termination of the installment sales agreement under Pennsylvania law prior to the bankruptcy, and ultimately whether Neshaminy Plaza was part of the bankrupt estates of FAMCO and NOBA. No decision had been rendered on this application when a trustee for FAMCO and NOBA was appointed, and a moratorium was placed on all pending litigation. Following an unsuccessful attempt by the trustee to open the state court default judgment, the trustee negotiated a settlement of the issue with NPA. The settlement provides for dismissal of the application on NPA's payment of $5,000. On September 28, 1984, the Bankruptcy Court approved the settlement, over the objection of a minority of NOBA's limited partners.

The objecting limited partners of NOBA filed their notice of appeal on November 6, 1984, and designated contents of the record on appeal, pursuant to Bankruptcy Rule 8006. NPA similarly designated additional items to be included in the record. Appellant objected to the inclusion of certain of NPA's designated items in the record and moved to strike them because appellant claimed they were not considered or relied upon by the Bankruptcy Court in rendering its decision. The items to which appellant objects are: (1) the Application of Debtors for Entry of an Order Clarifying Automatic Stay; (2) the Answer of NPA to the Application of Debtors; (3) the transcripts of hearings held by the Bankruptcy Court on May 5, 1981 and May 27, 1981 concerning the Application of Debtors. By Order of January 15, 1985, the Bankruptcy Court denied appellant's motion to strike. Subsequently, appellants filed an appeal of this Order.

## II. *The Standard of Review*

Under Bankruptcy Rule 8013, the District Court, in reviewing a decision of the Bankruptcy Court, may affirm, modify, reverse, or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, with due regard given to the Bankruptcy Court's opportunity to judge the credibility of witnesses. The reviewing court has plenary review of questions of law. *See, D.P. Enterprises v. Bucks County Community College,* 725 F.2d 943, 944 (3d Cir.1984); *Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 103 (3d Cir.1981).

### III. The Appellate Record

Appellant's first contention, and the subject of the appeal designated C.A. 85–1104, is that the Bankruptcy Court improperly considered and designated as part of the appellate record, certain of appellee's requested designations. These designations pertain to the application of FAMCO and NOBA for clarification of the automatic stay provisions, and hearings held on the issue in May 1981. Bankruptcy Rule 8006 provides the manner in which the parties designate the record on appeal. The Bankruptcy Court resolves disputes over the proper contents of the appellate record in the first instance. *In re Saco Local Development Corp.*, 13 B.R. 226 (Bankr.Me. 1981).

■ The record should contain all documents necessary to afford a full understanding of the case. *In re W.T. Grant Co.*, 432 F.Supp. 105 (S.D.N.Y.1977); *In re Michael's Corvette Supplies, Inc.*, 14 B.R. 365, 367 (Bankr.N.D.Ohio 1981). In particular, the appellate record should contain "all documents and evidence bearing on the proceedings below and considered by the Bankruptcy Judge in reaching his decision." *W.T. Grant*, supra, 432 F.Supp. at 106. Items not before the Bankruptcy Court and not considered by it in rendering its decision may not be included in the record. *In re Candor Diamond Corp.*, 26 B.R. 844, 846–47 (Bankr.S.D.N.Y.1983).

■ In this case, appellant complains that the application of the debtors, and the two hearings held in May 1981 on that application regarding the automatic stay were not introduced as evidence in the July 1984 hearing to approve the settlement, and therefore were not properly before the Bankruptcy Court. As a result, appellant argues, these items should not form part of the record on appeal. Underlying this claim is the contention that the proceedings regarding approval of the stipulation are wholly separate from the proceedings regarding that which the stipulation settled— the application for clarification of the automatic stay.

■ It is true that the application regarding the automatic stay and the hearings on that matter were not formally moved into evidence during the hearing on the propriety of the settlement. However, the proceedings which resulted in approval of the settlement were intimately related to the initial proceedings regarding the stay: the second set of proceedings were a settlement and compromise of the first. As such, the Bankruptcy Court could properly consider these matters in deciding whether to approve the settlement. "A court may take judicial notice of the record in prior related proceedings, and draw reasonable inferences therefrom." *Matter of Missionary Baptist Foundation of America*, 712 F.2d 206, 211 (5th Cir.1983). It is not crystal clear, either from the Bankruptcy Court's opinion or from its order denying appellant's motion to strike, whether the challenged items were in fact considered by the Bankruptcy Court in rendering its decision to approve the settlement. It is a reasonable inference that the Bankruptcy Court did so, however, and those earlier proceedings are in fact necessary to afford a complete understanding of the case. As the Fifth Circuit stated, "we cannot gainsay the bankruptcy court's 'right to take notice of its own files and records and [the absence of] any duty [on its part] to grind the same corn a second time.'" *Missionary Baptist Foundation*, supra, 712 F.2d at 211, *quoting Aloe Creme Labs v. Francine Co.*, 425 F.2d 1295 (5th Cir. 1970). I therefore conclude that the challenged items properly form a portion of the record for appeal.[1]

---

1. Appellant also challenges the propriety of including these items in the appellate record on due process grounds, alleging that it lacked notice that the items would be considered by the Bankruptcy Court and that Appellant was prevented from participating in the May 1981 proceedings. I note in passing that appellant was prevented from participating independently in the May 1981 hearings because of its own failure to intervene. However, because I believe that more evidence is required before the settlement be approved, appellant will have an opportunity to present evidence on the likelihood of success in the underlying litigation. *See,* Part

## IV. *Approval of the Settlement*

■ Rule 9019(a) of the Rules of Bankruptcy Procedure provides that "[o]n motion by the trustee and after hearing on notice to the creditors, ... the court may approve a compromise or settlement." Approval of the settlement lies within the sound discretion of the Bankruptcy Court. *Fogg v. Sherman Homes, Inc. (In re Sherman Homes, Inc.)*, 28 B.R. 176 (Bankr.D.Me.1983); *Providers Benefit Life Insurance Co. v. Tidewater Group, Inc. (In re Tidewater Group, Inc.)*, 13 B.R. 764 (Bankr. N.D.Ga.1981). In deciding whether to approve a settlement, the court must determine whether the proposed settlement is in the best interest of the estate. *Fogg, supra; Tidewater Group, supra. See, In re Hallet*, 33 B.R. 564, 566 (Bankr.D.Me.1983) (trustee has burden of showing that the compromise is in the best interest of the estate).

■ In exercising its discretion regarding whether to approve a trustee's application to settle a controversy, relevant criteria which the Bankruptcy Court may consider include: (1) the probability of success in the litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interests of the creditors. *In re Patel*, 43 B.R. 500, 504–05 (N.D.Ill.1984); *In re Carla Leather*, 44 B.R. 457, 466 (Bankr.S.D.N.Y.1984); *Tidewater Group, supra*, 13 B.R. at 765, W.T. Grant, 4 B.R. 53, 69 (Bankr.S.D.N.Y.1984). In determining whether to approve the trustee's application to settle a controversy, the Bankruptcy Court does not substitute its judgment for that of the trustee. *Carla Leather, supra*, 44 B.R. at 465. "Nor is the court 'to decide the numerous questions of law and fact raised by [objections] but rather to canvass the issues to see whether the settlement fall[s] below the lowest point in the range of reasonableness.'" *Id., quoting, In re W.T. Grant Co.*, 669 F.2d 599, 608 (2d Cir.1983). In addition, "[b]ecause the bankruptcy judge is uniquely situated to consider the equities and reasonableness of a particular compromise, approval or denial of a compromise will not be disturbed on appeal absent a clear abuse of discretion." *Patel, supra*, 43 B.R. at 505 (citations omitted).

■ In challenging the Bankruptcy Court's approval of the settlement, appellant contends that the settlement was not in the best interest of the NOBA estate. The Bankruptcy Court rejected that contention, writing:

> The application for approval of the settlement includes the statement that reinstating the pre-petition sale agreement would require the curing of deficiencies exceeding $500,000.00 for a property which did not generate a positive cash flow. Therefore, even if FAMCO and NOBA succeeded in recovering the property, the expenditure would not necessarily be warranted in view of the nature of the property. At the evidentiary hearing, the trustee argued that the stipulation represented a fair settlement of extensive negotiations over the past year. Given these facts, we are reluctant to rule that the settlement is not in the best interest of the estate.

*In re Neshaminy Office Building Associates*, 43 B.R. 74, 76–77 (Bankr.E.D.Pa., 1984). The Bankruptcy Court also indicated that appellant's chances of success in the underlying litigation were not great. *Id.* at 77 n. 5. *See also, In re Fidelity America Mortgage Co. (In re Whispering Brook Associates)*, 19 B.R. 568 (Bankr.E.D.Pa.1982) (Goldhaber, J.) (where debtors lost all interest in land by virtue of default and termination under land lease agreement prior to filing of bankruptcy petitions, automatic stay provisions did not apply to the property).

■ These conclusions are not adequate to support approval of the settlement. Even considering all of the evidence before the Bankruptcy Court and included in the record, there is not a firm foundation to conclude that the proposed settlement is

IV of this Memorandum. Therefore, I need not decide the due process question at this time.

in the best interest of the NOBA estate. The Bankruptcy Court found the settlement to be in the best interest of "the estate" generally, but not necessarily in the interest of NOBA. A general partner in a limited partnership owes a fiduciary duty to the limited partners. *See e.g., Dixon v. Trinity Joint Ventures*, 49 Md.App. 379, 431 A.2d 1364 (1981). In this case, FAMCO is the general partner of NOBA. Thus, FAMCO—and its trustee in bankruptcy—owe a fiduciary duty to NOBA to act in NOBA's best interest. This duty certainly extends to settlement of the interests of NOBA's limited partners in bankruptcy.

■ In assessing whether this proposed settlement is in the best interest of NOBA, the Bankruptcy Court must develop an understanding of the value of the rights being relinquished by NOBA, and the value of what NOBA receives in return. The record does indicate that prior to the default by FAMCO on its installment sales agreement with NPA, FAMCO paid to NPA $500,000.00 under that agreement. NOBA had, at the time of the alleged default, paid approximately $1,250,000.00 to FAMCO as part of the sale of the property from FAMCO to NOBA. The record also appears to indicate that reinstitution of the pre-petition installment sales agreement, if possible at all, would require curing a deficiency in excess of $500,000.00. Furthermore, at the time of the alleged default, Neshaminy Plaza was not generating a positive cash flow.

However, these figures alone do not prove the value of NOBA's rights which would be extinguished under the settlement. The facts that a substantial deficiency would have to be cured, and that the property generated a negative cash flow at the time of the default does not establish that NOBA's interests in the property are worthless. Indeed, this element could be

part of the desired effect of the limited partnership.

Paragraph 25(a)(ii) of the installment sales agreement between FAMCO and NPA define FAMCO's interest in the proceeds obtained by NPA after a default by FAMCO on its obligations to NPA. Similarly, NOBA's interest in the property is in whatever equity it has under its contract with FAMCO. However, it is not clear from the record that either the trustee or the Bankruptcy Court assessed the value of the rights which NOBA would relinquish under the settlement. It may be that the small sum which the trustee agreed to accept in settlement of this claim is truly indicative of the value of NOBA and FAMCO's rights, because of the likelihood of success in litigating the claim or for some other reason. But the record does not provide a sufficient basis for that conclusion.

The record also fails to indicate what NOBA obtained through the settlement. It is clear that NOBA and FAMCO together obtain $5,000.00 through the stipulation and compromise but the division of that money between the estates is not specified.

■ As I have stated before, to meet its burden the trustee must establish that the proposed compromise is in the best interests of the estate. In this case, the trustee has not presented sufficient evidence for a court to conclude that the compromise is in NOBA's best interest. The Bankruptcy Court approved the compromise without a sufficient evidentiary basis for an independent assessment of its reasonableness. It was therefore an abuse of the Bankruptcy Court's discretion to approve the settlement on the record before it. The finding that the compromise was in the best interest of the debtor was clearly erroneous. *See, In re Ancor Exploration Co.*, 30 B.R. 802, 809 (N.D.Ok.1983) (remanding approval of asset sale to Bankruptcy Court because record indicate to approve the sale).[2]

---

**2.** Appellant also argues that it was error for the Bankruptcy Court to approve the settlement without ordering an appraisal of the debtors' assets, here that of Neshaminy Plaza. *See*, 11 U.S.C. §§ 327(a), 1106(a). The use of appraisals

is not mandatory, but rather is discretionary with the Bankruptcy Court. While an appraisal may be helpful in making the required determination, I cannot say it is indispensible. The trustee and Bankruptcy Court may be able ade-

 Finally, appellant argues that the stipulated settlement was tantamount to an all asset sale of NOBA under 11 U.S.C. § 363(b), so that approval of the stipulation without the detailed procedural safeguards of a Chapter 11 reorganization was erroneous. The Bankruptcy Court rejected this argument, and I believe it was correct to do so.

Section 363(b) of the Bankruptcy Code provides that the trustee may sell property of the estate other than in the ordinary course of business. However, it seems that a majority of courts faced with the issue have limited the power of the trustee to sell substantially all of the assets of the estate when no emergency exists under section 363(b), in order to maintain the code's procedural safeguards, including that of meaningful disclosure under a plan of reorganization. *See, e.g., In re Lionel Corp.,* 722 F.2d 1063 (2d Cir.1983); *In re Brookfield Clothes, Inc.,* 31 B.R. 978 (S.D. N.Y.1983); *In re White Motor Credit Corp.,* 14 B.R. 584 (Bankr.N.D.Ohio 1981).

It is by no means clear from the record that NOBA's claim to Neshaminy Plaza represents NOBA's sole asset. Appellant presented no evidence below to establish that claim. *See, Matter of Ericson,* 6 B.R. 1002, 1007 (D.Minn.1980). More fundamentally, however, I do not believe it is proper to equate the settlement of this controversy over conflicting claims to Neshaminy Plaza with the sale of that property. As the Bankruptcy Court held, the settlement of a controversy over conflicting claims to property simply does not constitute a sale of that property. Appellant's argument presupposes the existence of a contested interest which has not been determined by the court. Appellant cannot thus use the bootstrap of a doubtful claim to require a full plan of reorganization in order to settle that doubtful claim.

An appropriate order follows.

quately to determine the value of NOBA's interests in another manner in the context of this

## ORDER

AND NOW, this 24th day of June, 1986, it is hereby Ordered that:

1. In C.A. 85–1104, the Order of the Bankruptcy Court is AFFIRMED.

2. In C.A. 85–328, the Order of the Bankruptcy Court is VACATED, and the matter is REMANDED for further proceedings consistent with the attached Memorandum.

AND IT IS SO ORDERED.