**In re Richard G. PAOLINO and Elaine M. Paolino.**

**Civ. A. Nos. 88–2713, 88–2715.**

United States District Court, E.D. Pennsylvania.

May 19, 1988.

Jonathan Ganz, Philadelphia, Pa., for Richard Paolino.

Elaine Paolino, pro se.

Michael H. Reed, Philadelphia, Pa., for Trustee.

Myron Bloom, Philadelphia, Pa., for Union Nat. Bank of Souderton and Univest Mtg.

## MEMORANDUM AND ORDER

FULLAM, Chief Judge.

Debtors separately appeal from an order of the Bankruptcy Court entered on February 11, 1988. Elaine Paolino's motion for an extension of time in which to file an appeal will be granted. Both debtors have filed timely appeals.

On February 11, 1988, the Bankruptcy Court approved a settlement agreement between the trustee and two substantial creditors of the debtors, Univest Mortgage Company ("Univest") and Union National Bank and Trust Company of Souderton ("UNB"). The settlement agreement was approved following three days of hearings and after the Bankruptcy Court had considered objections from the debtors and the Fleuhr group, whose members acted as guarantors of certain debts of the debtors. Prior to Bankruptcy Court approval, the agreement was revised to address some of the concerns raised by the various objecting parties. In addition, the Fleuhr group withdrew their objections without prejudice to any claim Univest might assert against them as guarantors.

In broadest terms, the settlement agreement does two things. First of all, it provides for the disposition of real estate (known as the William Tennent property) on which Univest holds a $2,750,000 first priority mortgage. Second, it grants a general release in favor of UNB and Univest. As to the William Tennent property, the agreement says that the trustee will endeavor to sell the property, with Bankruptcy Court approval. Sale proceeds will go to Univest to satisfy its secured claim; any proceeds above the amount of the mortgage will be paid to the trustee. Furthermore, Univest agrees to contribute to the bankruptcy estate 12% of the proceeds of the sale (up to a ceiling of $250,000). In the event that the trustee is unable to sell the property by June 15, 1988, Univest may proceed with foreclosure proceedings in state court, and UNB and Univest are required to pay the estate $50,000.

In sum, the settlement agreement allows the William Tennent property to be sold in order to satisfy Univest's first priority mortgage and requires that Univest and UNB contribute no less than $50,000 and perhaps as much as $250,000 to the estate. In exchange for the payment of $50,000, the trustee has agreed to execute a general release in favor of Univest and UNB. In particular, the trustee is required to withdraw claims against UNB and Univest in a pre-petition lawsuit filed by the debtors in state court. The release is drafted so that

it will not compromise the debtors' claims against a third defendant in that state court action.

Debtors' objections to the settlement agreement boil down to their belief that the state court action against UNB and Univest is worth considerably more than the $50,000 settlement provided for in the agreement approved by the Bankruptcy Court. Debtors contend that the record before the Bankruptcy Court was inadequate and that the Bankruptcy Court did not consider, in an orderly or explicit fashion, the four factors that should be assessed in evaluating a settlement agreement proposed by a trustee—the probability of success in the litigation, the likely difficulty in collecting, the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attended it, and the paramount interests of the creditors. See In re Neshaminy Office Building Associates, 62 B.R. 798, 803 (E.D. Pa.1984).

Debtors' argument is without merit. The Bankruptcy Court heard testimony from the special counsel who has handled the state court action since September 1986. Counsel testified that a $50,000 settlement is reasonable and fair, a conclusion based on counsel's experience in similar lender liability actions, on document discovery in the case, and on interviews with the Paolinos. The special counsel opined that while the debtors may have a significant claim against the law firm of Pearlstein, Salkin, et al., the third defendant in the state court action, the claims against UNB and Univest are "difficult" because the Paolinos do not appear to have been misled by representations made by either of these defendants.

Debtors attack the credibility of this testimony by pointing out that the special counsel has not yet conducted extensive discovery or consulted experts to value the case. However, if debtors are suggesting that settlement of a lawsuit by a trustee is never well-advised until there has been extensive discovery or expert valuation, the debtors are clearly off the mark since one legitimate reason to settle is to avoid the costs of developing a weak case. Moreover, if debtors are suggesting that no case can ever be adequately valued until extensive discovery and expert analysis have occurred, debtors' position is also over-stated since clearly there are instances when the light shed on a case through preliminary interviews with the client will be infinitely more illuminating than, and indeed render unnecessary, extensive discovery or expert analysis.

From what I can gather about the nature of the debtors' state court action against UNB, Univest, and Pearlstein, this is such a case. In other words, what the plaintiffs, i.e., the Paolinos, say about what happened to them would appear to be substantially more relevant and informative than what might be uncovered in future discovery. Dr. Paolino told the special counsel that his expectations of future financing, the subject of the Paolinos' state court lawsuit, were not based on representations made by either UNB or Univest, but rather on assurances of his counsel in the transaction, Pearlstein, Salkin, et al. This being so, special counsel quite logically, and it would seem, appropriately, concluded that the claims against Univest and UNB were tenuous at best. Although there is apparently some evidence that while acting as the Paolinos' counsel, Pearlstein also served as counsel for the bank, thus raising the possibility that UNB could be held liable for the representations of Pearlstein on a theory of apparent authority, special counsel discounted this theory since Dr. Paolino told special counsel that at the time of the financing discussions he was unaware of this connection between UNB and Pearlstein. In short, given the nature of the claims against UNB and Univest, the special counsel was reasonably well informed about the prospects for a recovery against Univest and UNB.

Debtors are the only interested parties in the bankruptcy proceeding who continue to object to the proposed settlement. The trustee testified that he believes the settlement is in the best interests of the estate; the two major creditors of the debtors, Univest and UNB, obviously feel the settlement is in their collective self-interest.

And it seems to me that this settlement agreement does serve the paramount interests of the creditors in that it could generate as much as $250,000 that otherwise would not be available to the estate.

An Order follows.

## ORDER

AND NOW, this 19th day of May, 1988, it is ORDERED that Elaine Paolino's motion for an extension of time to file an appeal is GRANTED.

It is FURTHER ORDERED that the Bankruptcy Court's Order of February 11, 1988 is AFFIRMED.