In re The CINCINNATIAN, LTD., Debtor.

Bankruptcy No. 1–90–03275.

United States Bankruptcy Court, S.D. Ohio, W.D.

July 13, 1992.

Richard D. Nelson, Cincinnati, Ohio, for reorganized debtor.

Mark C. Vollman, Cincinnati, Ohio, for City.

Lawrence R. Elleman, Cincinnati, Ohio, for Dollar Bank.

Daniel J. Wenstrup, Cincinnati, Ohio, for Gateway.

Thomas S. Shore, Cincinnati, Ohio, for New Ltd. Partnership.

Charles Caldwell, Asst. U.S. Trustee, Cincinnati, Ohio.

## DECISION ON MOTION RE LIMITED PARTNERSHIP AGREEMENT

BURTON PERLMAN, Bankruptcy Judge.

In this Chapter 11 case, a plan has been confirmed. The plan includes the following statement defining the Reorganized Debtor.

The Debtor herein as reorganized consistent with and pursuant to the Plan. The Debtor shall be dissolved and reorganized as a new Ohio limited partnership of which 99% shall be owned by the limited partners comprised of the Class 16 claimants and 1% by a corporation to be formed, of which Richard K. Bernstein shall be the President. The Reorganized Debtor shall assume and perform all of the Debtor's obligations, responsibilities and undertakings under the Plan and shall succeed to all right, title and interest in the Debtor's property.

A further provision of the plan relevant to the instant matter is:

The class 16 claims [unsecured claims exceeding $5,000] are impaired and the holders thereof shall receive in full payment of their claims limited partnership interests in the Reorganized Debtor [reorganized as a limited partnership pursuant to the laws of the state of Ohio] in the proportion that their allowed claims bear to the total of all allowed Class 16 claims. Class 16 claimants shall receive a total of ninety-nine percent (99%) ownership interest in the Reorganized Debtor.

The City of Cincinnati ("City") is a Class 16 unsecured creditor in this case in the amount of approximately $3.6 million, and was to become a limited partner receiving a 70% interest in the limited partnership pursuant to the foregoing provision. The general partner formed as contemplated in the confirmed plan, King Hotel Management Corporation ("King"), wishes to make a certain arrangement for management of the reorganized debtor. The City does not approve of the proposed arrangement. It is this which gives rise to the present controversy.

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This court also retains jurisdiction of this matter pursuant to the retention of jurisdiction clause in the plan, particularly paragraph VII(F). An additional basis of jurisdiction is that this is a question affecting implementation of the confirmed plan pursuant to 11 U.S.C. § 1142. This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(A).

To resolve the disagreement between reorganized debtor and the City, the reorganized debtor has moved for an order requiring that the City enter into the limited partnership agreement which the reorganized debtor has proffered to it. In its memorandum in opposition to the present motion, the City says that it "recognizes

that it is necessary for the City, the general partner and other limited partners to execute an Agreement of Limited Partnership setting forth its and their rights and obligations." In its memorandum, the City says further that it "objects to the Agreement of Limited Partnership only insofar as the agreement does not contain language which requires consent of the limited partners in order for the reorganized debtor (Limited Partnership) to enter into a management agreement with the general partner." Thus, while the motion here is styled as one praying that the court "order approval and implementation of limited partnership agreement for Class 16 creditors", the real issue here has to do with a particular provision of such agreement, or rather, the absence of a provision which the City believes should be present. The provision sought by the City is in effect the right to veto the choice by the general partner of a manager for the business of the reorganized debtor.

The dispute has been provoked by the fact that the City has been made aware of the Management Agreement which the general partner proposes to enter into. The proposed Management Agreement runs between the reorganized debtor and King (which is at the same time the general partner of the limited partnership reorganized debtor.) The Management Agreement provides for King to be paid a basic management fee of $84,000.00 per year, an incentive management fee of 10% of net operating profit per year, and out-of-pocket expenses for the executives and employees of King. The City objects to the 10% incentive management fee and the payment of expenses for employees of King other than Richard K. Bernstein, apparently basing this objection upon the terms under which Mr. Bernstein was employed as manager during the bankruptcy proceeding.

■ The issue of whether the City as limited partner may have a say in the terms of retention of the manager of the hotel enterprise raises the question of the extent to which a limited partner may exercise control over the business activities of the limited partnership. The relationship between general and limited partners in a limited partnership agreement is governed by state law. In 1985, Ohio adopted almost in its entirety the 1976 Revised Uniform Limited Partnership Act ("RULPA"), which is a model for the limited partnership statutes of numerous other states. *See generally* Lynn Marmer, *Revising Ohio's Limited Partnership Law*, 54 U.Cin.L.Rev. 271 (1985); Arnold Dixon Patchin & Jeffrey S. Senney, *Ohio Adopts the Revised Uniform Limited Partnership Act*, 11 U. Dayton L.Rev. 187 (1985). Several sections of the Ohio statute set forth the rights and obligations of general and limited partners. O.R.C. § 1782.24 provides that a general partner in a limited partnership has all the rights and powers and is subject to all the restrictions and liabilities of a partner in a partnership without limited partners. In a partnership without limited partners, every partner is an agent of the partnership for the purpose of its business, and the act of every partner in carrying out the ongoing business of the partnership binds the partnership. O.R.C. § 1775.08. Thus, a general partner in a limited partnership is entrusted with the authority to manage the affairs of the business and control the execution of partnership policy.

■ Limited partners, on the other hand, do not have the statutory right to exercise control of the partnership's decisions. The rights of limited partners tend to be supervisory in nature. These rights encompass the right to inspect and copy partnership records and the right to information regarding the financial and general business affairs of the partnership. O.R.C. § 1782.21. Limited partners are also authorized to act as agents for the limited partnership (subject to the approval of the general partner), consult with the general partner concerning the business of the partnership and vote on certain matters not relating to events in the ordinary course of business. O.R.C. § 1782.19. Ohio courts interpreting Ohio's version of the RULPA have compared the relationship between general and limited partners to the relationship between corporate directors and shareholders. General partners are similar to directors of corporate boards in that both

have ultimate control over the decisions made in the ordinary course of business. Limited partners, in contrast, are similar to shareholders in that they lack authority to participate in the making of business decisions of the partnership. *See, e.g., Hommel v. Micco,* No. 90–L–15–101, 1991 WL 268819, at *3 (Ohio App. Dec. 13, 1991). *See also Commonwealth Department of Revenue for Bureau of Accounts Settlement v. McKelvey,* 526 Pa. 472, 587 A.2d 693, 695 (1991) (limited partners under Uniform Limited Partnership Act must abstain from participation in conduct of business in exchange for limitation of liability); 59A *Am.Jur.2d* Partnership § 1344 at 914–15 (1987) (role of limited partner very restricted).

The case *In re Estate of Hall,* 517 Pa. 115, 535 A.2d 47 (1987) is instructive. In that case, limited partners brought an action against general partners contending that the general partners had conducted themselves improperly in regard to the affairs of the limited partnerships which were involved. In holding against the limited partners, the court stated:

> ... In exchange for exposure to only limited liability, and the tax advantages available because of the use of the limited partnership entity ..., the limited partners must abstain from participation in the conduct of the business. Discretion to conduct the business and to make routine and normal business judgments must, therefore, rest with the general partner, and that is precisely what these agreements provided. The decision by Barry Hall to employ his solely owned management company (while he operated the two corporate general partners on account of his position as executor) may or may not have constituted sharp dealing. Nonetheless, it was well within the sound discretion of each of the corporate general partners to make such a decision in the course of their control and conduct of the partnership business. There is absolutely no showing in this record that the 5% or 6% management fees were excessive or that they exceeded fees normally charged at the time for this kind of service. There is no evidence that there

was a breach of fiduciary duty by either corporate general partner....

*Id.* 535 A.2d at 56.

So here, the City has made "absolutely no showing" that the proposed terms of the management agreement are excessive. In the absence of such a showing we must rule against the City in the present controversy. The City is not entitled to have included in the limited partnership agreement a provision giving it a voice in the selection of the manager of the reorganized debtor. Indeed, to do so would jeopardize the status of the City as a limited partner. The rights of the City as a limited partner in protection of its interest is limited to contentions that the general partner has breached its fiduciary duty to act in good faith on behalf of the partnership. *See, e.g., In re Neshaminy Office Bldg. Assoc.,* 62 B.R. 798, 804 (Bankr.E.D.Pa.1986).

The reorganized debtor and the City will within ten (10) days of the date of this decision present a mutually agreeable order embodying our holding. If the parties cannot agree, the reorganized debtor may present an order which shall include a statement of basis for the disagreement between the parties.