In re EASTWIND GROUP, INC., Debtor.

John W. Morris, Chapter 11 Trustee of the Eastwind Group, Inc., Plaintiff,

v.

National Union Fire Insurance Company of Pittsburgh, Pa, Defendant.

John R. Thach [John W. Morris Chapter 11 Trustee as Substituted Plaintiff for the Applicable Counts], Plaintiff,

v.

The Eastwind Group, Inc., et al., Defendants.

Bankruptcy No. 00–33372.
Adv. Nos. 01–692, 00–906.

United States Bankruptcy Court, E.D. Pennsylvania.

Jan. 14, 2004.

Warren T. Pratt, Drinker, Biddle & Reath, LLP, Philadelphia, PA, John Szulewski, Unisource Worldwide, Inc., Philadelphia, PA, Michael Alan Richard, Richpac Management Systems, Inc., Huntington Beach, CA, Harvey A. Goralnick, Focus Partners LLC, New York City, Steven Usdin, Adelman, Lavine,

Gold & Levin, Philadelphia, PA, for Budd Co.

Douglas J. Smillie, Fitzpatrick, Lentz & Bubba P.C., Center Valley, PA, Carole E. Momjian, Deputy Attorney General, Philadelphia, PA, Thomas M. Rath, Special Asst. U.S. Attorney, Philadelphia, PA, for RIS Paper.

Mary Russell, Fine, Kaplan & Black, Philadelphia, PA, for Superior Exec. Outplacement.

Glenn S. Gitomer, McCausland, Keen & Buckman, Radnor, PA, for Odyssey Capital, LP.

Paul A. Bucco, Davis, Bucco & Ardizzi, Conshohocken, PA, Alan A. Turner, Turner & McDonald, P.C., Philadelphia, PA, Bruce Murray, Kennet Square, PA, Anthony Mendicino, Villanova, PA, William B. Miller, Ambler, PA, for Andrew P. Panzo.

Doron A. Henkin, Timothy A. Gallogly, Philadelphia, PA, for Plaintiff.

Peter A. Lesser, Sirlin, Gallogly & Lesser, P.C., Philadelphia, PA, for Howard Appel and Stephen P. Harrington.

Edward C. Toole, Jr., Pepper Hamilton, LLP, Philadelphia, PA, for Pepper Hamilton.

Earl M. Forte, III, Philadelphia, PA, for John R. Thach.

Albert A. Ciardi, III, Ciardi, Maschmeyer & Karalis, PC, Philadelphia, PA, for Paul A. DeJuliis, Polychem, ConMat Technologies, and Edward F. Sager, Jr.

James A. Georges, White and Williams, LLP, Philadelphia, PA, for National Union.

Charles M. McCuen, Ominsky & Ominsky P.A., Philadelphia, PA, for ProFutures.

Doron A. Henkin, Marvin, Larsson, Henkin & Scheuritzel, Philadelphia, PA, for trustee.

John W. Morris, Philadelphia, PA, Chapter 11 Trustee.

George M. Conway, Office of the United States Trustee, Philadelphia, PA, United States Trustee.

OPINION

STEPHEN RASLAVICH, Bankruptcy Judge.

*Introduction.*

The Trustee has filed a Motion to Approve Settlement Agreements in the above adversary proceedings. ProFutures Special Equities Fund, L.P., objects to the Motion. A hearing on this matter was held on December 3, 2003 at which the parties were offered the opportunity to present evidence and oral argument in support of their positions. For the reasons set forth below, the Motion is granted.

### Factual Background

The Settlement Agreements resolve claims brought by the Trustee against National Union Fire Insurance Company (National) and certain directors and officers (the "D/O's") of the Debtor. The claim against National arises under the Debtor's directors and officers liability policy (the Policy). The claims against the D/O's are derivative and arise out of a 1998 transfer of what was alleged to be the Debtor's principal asset, a subsidiary known as Polychem. Under this tripartite arrangement, the Trustee will release National and the D/O's from all claims against them, National will pay the estate $550,000, and the D/O's will release National from any further liability under the Policy. *See* Motion.

ProFutures is a creditor who had sued the Debtor and the D/O's prepetition. It objects to the settlements on both substantive and procedural grounds. The compro-

mise is substantively flawed, it maintains, because it assumes rights in property—the proceeds of the Policy—which is not part of this estate. And procedurally, the Trustee has not demonstrated that the settlement is in the best interests of the estate. *See* Objection.

### Discussion

*The Respective Arguments As to Whether the Proceeds are Property of the Estate*

■ The question of the Trustee's interest in the proceeds is crucial to the resolution of this dispute. Without such an interest, the Trustee would lack standing to compromise that asset. *See In re Manousos*, 233 B.R. 907, 910 (Bankr.D.Conn.1999) ("Clearly, the trustee cannot seek to compromise claims which are not property of the estate.") The Trustee offers two reasons in support of his claim that the proceeds are property of this estate: first, the Debtor was an insured under the Policy; and second, the Policy grants the Trustee—as successor to the Debtor—discretion to pay proceeds for an indemnifiable loss either to the D/O's directly or to himself on behalf of the estate. *See* Motion, ¶ 13. ProFutures reads the Policy differently. It maintains that the Policy gives complete priority to non-indemnifiable claims over indemnifiable or other claims. *See* Objection ¶¶ 20, 23. As the claims it raises give rise to a non-indemnifiable loss, ProFutures concludes, the proceeds are payable directly to the D/O's for ProFutures' benefit. This excludes the proceeds from the definition of property of the estate.

*Insurance Policies, Proceeds and Property of the Estate*

■ Because corporations pay for and own insurance policies, courts considering the question have concluded that the *policies* are property of the estate pursuant to 11 U.S.C. § 541(a)(1). *See, e.g., A.H. Rob-*

*ins Co. v. Piccinin,* 788 F.2d 994, 1001 (4th Cir.), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986) ("Under the weight of authority, insurance contracts have been said to be embraced in this statutory definition of 'property.' "). This makes sense given the fact that the filing of a bankruptcy petition creates an estate which includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *In re First Central Financial Corp.,* 238 B.R. 9, 16 (Bankr.E.D.N.Y.1999); 11 U.S.C. § 541(a)(1). In fact, the scope of property of the estate is to be interpreted very broadly. *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

Hence, when a corporation becomes the subject of a bankruptcy case, its insurance policies become property of the bankruptcy estate. *See, e.g., A.H. Robins Co.,* 788 F.2d at 1001; *In re Davis,* 730 F.2d 176, 184 (5th Cir.1984); *Johns Manville Corp. v. Asbestos Litig. Group (In re Johns–Manville Corp.),* 40 B.R. 219, 230–31 (S.D.N.Y.1984). Generally, the estate's property interest in the proceeds of a typical liability policy is an unstated given. *First Central Financial, supra.* In most situations this is entirely understandable, since the debtor is also the beneficiary of the liability insurance coverage. *Id.*

■ But the question of who owns the *proceeds* of a liability policy owned by the debtor is not easily answered. This is especially so in the case of a D & O policy. Such policies typically provide direct protection to the corporation's directors and officers. Indirect coverage is often afforded to the corporation for losses incurred indemnifying its principals. And some policies provide direct protection to the company (sometimes referred to as "entity coverage") for certain kinds of claims, e.g.,

violations of securities law. Some cases have held that such proceeds are property of the estate either because the debtor owns the policy, the debtor is a named insured under the policy, or because the estate would simply benefit from including the proceeds. *See In re Sacred Heart Hospital of Norristown*, 182 B.R. 413, 419–20 (Bankr.E.D.Pa.1995) (holding that existence of entity coverage was sufficient to bring proceeds into estate notwithstanding absence of claim against debtor corporation); *In re Circle K Corp.*, 121 B.R. 257 (Bankr.D.Ariz.1990) (holding that existence of indemnity coverage notwithstanding that debtor had paid any such claims on behalf of principals operated nevertheless to bring proceeds into estate in order to avoid diminution of assets); *In re Minoco Group of Cos., Ltd.*, 799 F.2d 517, 519 (9th Cir.1986) ("[W]e see no significant distinction between a liability policy that insures the debtor against claims by consumers and one that insures the debtor against claims by officers and directors. In either case, the insurance policies protect against diminution of the value of the estate."); *In re CyberMedica, Inc.*, 280 B.R. 12, 17 (Bankr.D.Mass.2002) ("There is a fundamental test that has been used in determining whether or not property belongs to the estate and that test is whether 'the debtor's estate is worth more with them then without them.'" *citing Minoco, supra* at 519); *In re Jasmine, Ltd.*, 258 B.R. 119, 128 (D.N.J.2000) ("This Court finds [ ] that the trustee's authority over the bankruptcy estate extends to the Aetna D & O Policy and its proceeds"); *see also In re marchFIRST, Inc.*, 288 B.R. 526, 532 (N.D.Ill.2002) (enjoining shareholders from prosecuting class action against directors and officers on basis that it might diminish asset of estate: proceeds of D & O policy); *In re Adelphia Communications Corp.*, 302 B.R. 439, 450–52 (Bankr.S.D.N.Y.2003) (using § 105 equitable power to enjoin D & O insurer from obtaining declaratory ruling that policy void due to D & O's fraud as impairing debtor's ability to reorganize). Other cases focus less on the effect on the estate and more on the terms of the policy to determine if the proceeds are indeed property of the bankrupt. *See, e.g., In re Louisiana World Exposition*, 832 F.2d 1391, 1394 (5th Cir.1987)(holding that where the policy names only the directors or officers as insured, the proceeds are not property of the estate); *In re Daisy Systems Securities Litigation*, 132 B.R. 752, 755 (N.D.Ca.1991) (following *Louisiana World Exposition* in distinguishing ownership of policy versus ownership of proceeds); *In re Youngstown Osteopathic Hosp. Ass'n*, 271 B.R. 544, 550–51 (Bankr.N.D.Ohio 2002) (holding that where the policy includes indemnification coverage to the corporation, proceeds are not property of the estate where there is no proof of payments by corporation of payments); *First Central Financial, supra*, 238 B.R. at 17 (holding that because no claims had been filed against the debtor, existence of entity coverage did not make proceeds property of the estate); *In re CHS Electronics, Inc.*, 261 B.R. 538, 540 (Bankr.S.D.Fla.2001) (holding that entity coverage inapplicable because there were no remaining securities claims against the debtor). Regardless of which methodology this Court were to choose, the result would be the same: the proceeds are property of the estate for reasons which will become clear below. The Court begins with an analysis of the Policy.

*The D/O Policy*

National issued a "claims-made" Directors, Officers and Corporate Liability Policy to the Debtor for the period July 25, 1998, to July 25, 1999. *See* Policy attached as Ex. "B" to Objection. The limit of coverage was $1 million. *Id.*, p. 2. Instead

of a deductible, the Policy provided for a "retention" from payout of up to $125,000 to cover defense costs. *Id.* Coverage was provided as follows:

### COVERAGE A: NATURAL PERSON INSURED INSURANCE

This policy shall pay the Loss of each and every Natural Person Insured(s) arising from a Claim … first made against the Natural Person Insures(s) … for any actual or alleged Wrongful Act in their respective capacities as Natural Person Insured(s), except when and to the extent that the Company has indemnified the Natural Person Insureds.

### COVERAGE B: CORPORATE LIABILITY INSURANCE

This policy shall pay the Loss of the Company arising from a:

(i) Securities Claim[1] … first made against the Company, or …

(iii) Claim … first made against a Natural Person Insured(s), … but … only to the extent that the Company has indemnified the Natural Person Insureds for such Loss pursuant to law, common or statutory, or contract, or the Charter of By-laws of the Company duly effective under such law which determines and defines such rights of indemnity.

*See* Policy, ¶ 1. The Policy thus provided coverage to the D/O for a loss not indemnified by the corporation (Coverage A), to the corporation to the extent it indemnified the D/O (Coverage B(iii)), and, significantly, to the corporation for losses resulting from securities claims. (Coverage B(i))

In its Complaint, ProFutures alleged violations of securities laws on the part of both the D/O's *as well as the Debtor. See* Objection, ¶ 4. The Debtor was thus covered for the very type of claim brought against it. For that reason, the Trustee, as successor to the Debtor, rightly claims an interest in the Policy proceeds.

*By Entering Into the Settlement The D/O's Have Assigned Their Rights in the Proceeds*

Another point emphasized by the Trustee is the accord reached with the D/O's themselves. *See* Trustee's Second Supplement to Motion, p. 5. They are signatories to various settlements with the Trustee regarding his direct claims against them— claims which would trigger coverage under the Policy. The consideration flowing to the D/O's is the release of those claims. And significantly, in *none* of the cases cited by ProFutures are both the D/O's and the corporation in agreement regarding the disposition of the D/O proceeds in question. Unlike the instant case, all of the cases cited find them-or their successors in interest—positioned adversely with regard to the ownership of the proceeds. *See In re Louisiana World Exposition, Inc., supra* at 1394 (involving claims of creditors' committee versus D/O's); *In re Adelphia Communications Corp, supra* at 440–42(involving competing claims to proceeds of D/O's versus Chapter 11 DIP);

---

1. A securities claim is defined as:

 a Claim (including a civil law suit or criminal proceeding brought by any governmental body) made against an Insured and brought anywhere in the world alleging a violation of any law, regulation or rule, whether statutory or common law, which is (1) brought by any person or entity alleging, arising out of, based upon or attributable to, in part or in whole, the purchase or sale of offer of solicitation of an offer to purchase or sell, any securities of the Company, or

 …

 (3) brought by a securities holder of the Company, with respect to such securities holder's interest in such securities of the Company, whether directly or by class action.

 *See* Policy, ¶ 2(*o*).

*First Central Financial Corp., supra* at 12 (involving trustee versus certified class of plaintiff shareholders); *Youngstown Osteopathic Hospital Association, supra* at 547 (pitting DIP versus D/O's); *In re CHS Electronics, Inc., supra* at 539 (involving certified shareholder class versus Trustee); *In re Vitek, Inc.,* 51 F.3d 530, 532 (5th Cir.1995) (pitting trustee versus D/O's); *In re marchFIRST, supra,* at 529 (finding trustee contesting claims of shareholders to D/O proceeds). And in one case where the D/O proceeds were found not to be estate property, the court implied that a different result might obtain if the D/O's been on board with the Trustee's proposed settlement:

> [ ]The Insurance Settlement which extinguishes the rights which Colkitt and other officers and directors might have in the policies at issue cannot therefore be approved by the Court. Since rights under the policies may belong to the officers and directors and not to [the debtor], the Trustee was not entitled to bargain away those rights in return for a payment to the estate from the insurers. *Colkitt and the other officers and directors were not parties to the Insurance Settlement and were not compensated in any way for the extinguishment of their rights* which would result from court approval of that Settlement.

*United States ex rel. Rahman v. Oncology Associates, P.C. (In re Equimed, Inc.),* 269 B.R. 139, 160 (D.Md.2001) (emphasis added). The element missing in *Rahman*—the agreement of the D/O's—is precisely what this Trustee has procured. The significance of that fact cannot be overstated. Such policies are purchased primarily for the benefit of responsible parties of a corporate entity. *See First Central, supra,* 238 B.R. at 13. Having been assigned by the D/O's for valuable consideration, the proceeds of the policy now belong to the Trustee.

*Whether the Policy's Payment Provision Affects the Trustee's Claim to the Proceeds*

The Trustee's second argument in support of his argument that the proceeds are estate property implicates the very same provision of the Policy upon which ProFutures' bases its contrary claim. That provision dictates the order in which claims are paid:

> In the event of Loss arising from a Claim or Claims for which payment is due under the provisions of this policy, then the Insurer shall:
>
> (a) first, pay such non-Indemnifiable Loss for which coverage is provided under Coverage A of this policy; and
>
> (b) then, with respective to whatever remaining amount of the Limit of Liability is available after payment of such non-Indemnifiable Loss, at the written request of the chief executive officer of the Named Corporation, either pay or withhold payment of such other Loss for which coverage is provided under this policy.
>
> In the event the Insurer withholds payment pursuant to subparagraph (b) above, then the Insurer shall at such time and in such manner as shall be set forth in written instructions of the chief executive officer of the Named Corporation, remit such payment to the Company or directly to or on behalf of a Natural Person Insured.

*See* Policy, ¶ 8. The Trustee reads this provision to give him complete discretion regarding payment instructions. According to the Trustee, an indemnifiable loss shall be paid as the Trustee directs; in this case, the Trustee has directed payment to the estate. *See* Motion, ¶ 13. ProFutures interprets the provision as establishing absolute priority of the D/O

claims for a non-indemnifiable loss over the rights of the corporation to payment for either an indemnity or direct claim. According to ProFutures, the Debtor's right to payment and to direct proceeds under Coverage B is subordinate to the right of Directors and Officers under Coverage A. *See* Objection, ¶¶ 20, 23. However, the apparent flaw in ProFutures' argument is that Coverage A deals only with non-indemnifiable claims. Significantly, the Debtor indemnified its D/O's. *See* Exhibit 3, Amended and Restated Certificate of Incorporation. There are, then, no non-indemnifiable losses to speak of.

*The Effect of the Settlement on ProFutures' Right to Sue*

ProFutures also complains that the settlement improperly enjoins it from pursing "collection rights against a non-debtor third party such as National Union." *See* Objection, ¶ 13. This statement is incorrect in two ways. First, the settlement does not deprive ProFutures of its "collection rights." To the contrary, those rights exist as against the D/O's and such right is unaffected by this settlement. *See* Trustee's Memorandum, p. 3. Second, ProFutures has no rights against National whatsoever because the proceeds have been assigned by the D/O's to the Trustee. ProFutures may maintain its suit against the D/O's but cannot expected to recover against the proceeds of the Policy.

*Has the Trustee Established the Required Elements for Approval of a Compromise?*

 ProFutures' final argument is that the Trustee has failed to demonstrate that the settlement should be approved. Under Bankruptcy Rule 9019, a bankruptcy judge has the authority to approve a compromise of a claim, provided that the debtor, trustee and creditors are given twenty days' notice of the hearing on approval of a compromise or settlement by the trustee. *See* B.R.2002(a)(3), 9019(a).

Approval of the settlement lies within the sound discretion of the Bankruptcy Court. *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D.Pa.1986) In deciding whether to approve a settlement, the court must determine whether the proposed settlement is in the best interest of the estate. *Id.* The Third Circuit has held that this particular process of bankruptcy court approval requires a bankruptcy judge to assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal. *See In re Martin*, 91 F.3d 389, 393(3d Cir.1996). Taking its cue from *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25, 88 S.Ct. 1157, 1163–64, 20 L.Ed.2d 1 (1968), the Third Circuit recognizes four criteria that a bankruptcy court should consider in striking this balance: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors. *See Martin, supra.*

 The proponent of a settlement bears the burden of proof. *See In re Glickman Berkovitz, Levinson & Weiner*, 204 B.R. 450, 455 (E.D.Pa.1997). Case law indicates that when considering the relevant factors the court should avoid second-guessing the Trustee in the exercise of his business judgment but rather should endeavor to ascertain whether the terms of the Trustee's proposed settlement fall below the lowest range of reasonableness. *See Neshaminy, supra* at 803. In this respect, it was also noted by Chief Judge Fox of this Court that deference to the position of the Trustee is particularly appropriate when the trustee has been appointed by the court and has served from

the outset as an independent party to investigate, prosecute, and resolve the complex affairs of a defunct and troubled entity. *See generally, In re Foundation for New Era Philanthropy*, 95–23729, Memorandum Opinion and Order dated August 21, 1996, pp. 73–75. That admonition has particular relevance here.

*Putting a Value on Pending Litigation*

■ ProFutures' chief complaint regard the settlement as proposed is the lack of evidence of the value of the claims to be compromised. Specifically, ProFutures alleges, the motion is silent as to what the claims against National and the settling D/O's are worth. *See* Objection, ¶ 32.

While no discrete value is stated, the objector must bear in mind the inherent difficulty in placing a value on pending litigation. This very issue was addressed by Chief Judge Fox, again in the *New Era* case, albeit in a different opinion. His discussion on this point is worth quoting at length:

> [T]he valuation of litigation traditionally has three components: the amount likely to be awarded by final judgment; the cost of obtaining that award; and the portion of the award that may be collected on execution. the actual recovery less costs is the valuation of the litigation. If the settlement comes close enough to this value it should be approved. If the proposed settlement is way below market value it should not. Moreover, it is the Trustee's burden to demonstrate that fair value has been secured by way of the settlement. [citations omitted]
>
> . . .
>
> *Of all type of assets, litigation is among the most difficult for a bankruptcy court value.* One method that could be used by a trustee to justify his settlement position is to conduct a mini-trial in bankruptcy court, so that the strength

and weaknesses of the case—relevant to its value—could be demonstrated. However, such an approach would be unusual and is certainly not required in all instances. [citations omitted] The more common approach, and the one utilized in this instance is for the Trustee to offer evidence as to the likely range of recovery, along with the likely range of costs of litigation for comparison with the proposed settlement. This comparison should consider all benefits which would be received by the estate from the settlement.

*New Era, supra,* Memorandum Opinion and Order dated July 22,1996, pp. 19–20 (emphasis added). Like the Trustee in *New Era,* this Trustee testified as to what the case was worth and why, as well as the cost of getting to that point.

*Probability of Success in Litigation*

In the Trustee's owns words, "it was by no means assured that [he] would prevail." *See* Memorandum, p. 1. The Trustee cited defenses raised by National. *Id.* p. 2, n. 2. These included the timing of the claim and policy exclusions based on conduct of the D/O's.

Regarding timing, the Trustee testified that the Policy was issued on a "claims made" basis. This required any claim to be brought within the Policy period: July 25, 1998 through July 25, 1999. The claims were raised in April 2000. *See* N.T. 9; Ex. 2. The Trustee also noted that the Policy excluded coverage for deliberate fraudulent acts and given that the prepetition claims leveled against the D/O's sounded in fraud, the litigation might have foundered for that reason. N.T. 17. But the major concern of the Trustee's was the question of damages: even assuming that the conduct as alleged was proven, he is not convinced that would not necessarily translate into meaningful recovery for the estate. He believes this because he does

not accept the premise underlying the Pro-Futures and Thach litigations: that the subsidiary Polychem—alleged to have been transferred by the Debtor for less than reasonably equivalent value—had the substantial value ascribed to it. Based on what the Trustee knew, the Debtor may very well have obtained no value in exchange for an asset similarly valueless. If that is true, then damages would be minimal. N.T. 18–19.

But notwithstanding those questions, the Trustee has some indication of what his case is worth. To a significant degree, the viability of the case was tested in mediation. Although that process did not result in settlement, the Trustee testified that negotiations continued post-mediation until they did. N.T. 13, 16. The settlement amount ($550,000) is, according to the Trustee, within the range recommended by the mediator: $500,000 to $550,000. *Id.* That makes the proposed payment probative as to the value of the Trustee's claim.

*Likely Difficulties in Collection*

The record demonstrates no difficulties in collecting from National in the event of judgment. There is simply nothing to indicate that it is anything but solvent. But if the settlement were aborted, the case litigated, and National found not liable for any reason, the Trustee was pessimistic about the prospect of collecting from the D/O's. N.T. 17. He described the D/O's as a "collection of empty frayed pockets as to which [he] saw no real hope of recovery." N.T. 19 Conversely, while they may have been judgment proof, the D/O's were essential to the settlement as National would not settle without releases from them. N.T. 13–14.

*Complexity of the Litigation Involved*

One of the same factors that made litigation prospects uncertain—putting a value on Polychem—demonstrates the level of complexity of this dispute. Unraveling that transaction, the Trustee believes, would require considerable time and expense. It occurred almost six years ago and it would cost another $100,000 to determine what exactly happened. *See* Trustee's Memorandum, p. 2.

*Paramount Interest of the Creditors*

The final consideration is whether the creditors would be better served by approving this settlement. The settlement provides a substantial sum to the estate while preserving each individual creditor's claim against the individual D/O's. Alternatively, continued litigation would mean more expense and delay before reaching an outcome by no means certain both in terms of liability and, importantly, recovery. For the creditors, this settlement is the better option.

**Summary**

Because the Trustee may assert an interest in the Policy proceeds, they are property of the estate subject to compromise. Likewise, he has carried his burden of proof on the question of whether the Settlement Agreements are in the best interests of this estate.

An appropriate order follows.

ORDER APPROVING SETTLEMENT AGREEMENTS

AND Now, this day of January, 2004, upon hearing and consideration of the Motion to Approve Settlement Agreements, dated October 27, 2003, filed by John W. Morris, Chapter 11 Trustee ("Trustee") of the Eastwind Group, Inc. ("Eastwind"), and upon notice to all parties in interest and a hearing on December 3, 2003, which notice and service as set out on the Trustee's certificate of service is adequate for these purposes, and for the reasons set forth in the attached Opinion, it is hereby:

**ORDERED** as follows:

The Settlement Agreement with National Union fire Insurance Company of Pittsburgh PA ("National Union") is **APPROVED,** and the aforesaid Motion to approve such settlement is **GRANTED.**

The Settlement Agreements with Edward F. Sager, Jr., et al., with William B. Miller and with HMA, et al. are also **APPROVED** and the Motion to approve such settlements is **GRANTED**.

It is hereby further **DECLARED** as follows:

1. National Union Directors, Officers and Corporate Liability Insurance Policy number 856–56–64 (the "Policy"), and all proceeds thereof are property of the estate of Debtor, The Eastwind Group, Inc.

2. The Policy vests in the Trustee authority to determine any payment upon indemnifiable losses for Debtor's directors and officers, and authority to require that National Union pay proceeds to Eastwind directly. The Trustee's direction here that National Union pay the Policy proceeds to Eastwind's bankruptcy estate is a proper exercise of his authority under the Policy and National Union's payment of the Settlement Amount to the Trustee under the Coverage Settlement is a proper and complete discharge of its obligations under the Policy.

3. Except as expressly provided herein, all present or former directors and officers of Eastwind or its subsidiaries, and Profutures Special Equities Fund, L.P., and their successors, assigns, affiliates, principals and officers, are and shall be barred from separately pursuing and shall take no action to pursue, whether before this Court or any other Court, and whether against Eastwind, the Trustee, National Union, their successors and assigns, or any other person, any claim for coverage under the Policy or claim to Policy proceeds.

4. The sole and exclusive procedure for any such party to assert a claim for payment related to the Policy or its proceeds, shall be the proof of claim process in this bankruptcy case, and not any independent claim against National Union or any other party. All persons who have not already released or settled such rights in favor of the Trustee and who believe they have such a claim or right relating to the Policy, or who otherwise assert any right or claim to Policy proceeds (including, without limitation Eastwind's and its subsidiaries' present or former directors or officers, and Profutures Special Equities Fund, L.P.), must assert any such claims by filing a proof of claim in this bankruptcy case within 30 days after service of this Order. In responding to any such proof(s) of claim, the Trustee may assert any and all defenses, procedural and substantive, including, but not limited to, lack of timeliness of any such proof of claim, subordination of claims and including defenses to coverage available to National Union, in addition to any other defenses or objections that he may assert in his role as Chapter 11 Trustee of Eastwind.