**In re TIDEWATER GROUP, INC., Debtor.**

**PROVIDERS BENEFIT LIFE INSURANCE COMPANY, Plaintiff and Third-Party Plaintiff,**

**v.**

**TIDEWATER GROUP, INC., Debtor-in-Possession, and Stacey W. Cotton, Examiner, Defendants,**

**and**

**American Centennial Life Insurance Company, Third-Party Defendant.**

**Bankruptcy No. 79–02972A.**
**Adv. No. 79–0028A.**

United States Bankruptcy Court, N. D. Georgia, Atlanta Division.

Aug. 27, 1981.

William F. Welch, Neely, Player, Hamilton & Hines, Atlanta, Ga., for providers.

Frank W. Scroggins, Hicks & Scroggins, Atlanta, Ga., for Tidewater.

John L. Taylor, Jr., McDaniel, Chorey & Taylor, Atlanta, Ga., for American Centennial.

Stacey W. Cotton, Cotton, White & Palmer, Atlanta, Ga., for Examiner.

ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This proceeding comes before the Court on the above-referenced debtor's application

seeking approval of the settlement agreement entered into with Providers Benefit Life Insurance Company (hereinafter "Providers"). That settlement agreement was the result of the following facts:

1.

On or about October 30, 1979, Providers and Tidewater Group, Inc. (hereinafter "Tidewater") entered into an agreement for the purchase by Providers of 100% of the issued and outstanding capital stock of American Centennial Life Insurance Company (hereinafter "American Centennial"). The sale was confirmed by the Order of this Court dated November 1, 1979. The purchase price contained in the contract of sale was $700,000 subject to adjustment based on the deficiency in the capital and surplus account.

2.

Pursuant to the sales contract, Providers deposited $75,000 into the escrow account of Cotton, Katz, White & Palmer.

3.

On or about November 21, 1979, Providers filed a complaint against Tidewater seeking *inter alia* the return of the funds held in escrow. Tidewater denied the allegations in Providers' complaint and counterclaimed for damages arising from the failure of Providers to complete the confirmed sale.

4.

At some point prior to August 27, 1980, an oral agreement was reached between the attorneys for Providers and the attorneys for Tidewater. That agreement proposed to settle the aforementioned litigation on terms reduced to writing. The Order of the Court dated February 10, 1981 held that this oral agreement was sufficiently definite to be binding on the parties and that it was subject only to the approval of the Court as to its enforceability. 8 B.R. 930 (Bkrtcy.)

5.

On November 24, 1980, the Circuit Court for the City of Baltimore, Maryland, entered an order authorizing the receiver of ACLIC, the State Insurance Commissioner of Maryland (hereinafter "Commissioner"), to enter into an indemnification agreement with Tidewater. That agreement obligated the Commissioner to indemnify Tidewater for losses up to $40,000, plus accrued interest on the $75,000 now held in escrow, in order that Tidewater may pursue its claim against Providers rather than settle.

6.

■ Because of this indemnity agreement, Tidewater now takes the position that the settlement is not in the best interest of creditors.

Bankruptcy Rule 919 reads in relevant part that:

"(a) Compromise. On application by the trustee or receiver and after hearing on notice to the creditors as provided in Rule 203(a) and to such other persons as the court may designate, the court may approve a compromise or settlement."

The determination of whether to approve an application to compromise is a matter within the sound discretion of the bankruptcy judge. *Drexel v. Loomas*, 35 F.2d 800 (8th Cir. 1929); *Scott v. Jones*, 118 F.2d 30, 32 (10th Cir. 1941). The bankruptcy judge should exercise this discretion based on the best interest of the creditors with regard to the acceptance or rejection of a compromise. *Drexel, supra,* at 806. *Drexel* sets forth four criteria to be examined by the judge in the exercise of his discretion. They are:

"(1) the probability of success in the litigation;

(2) the difficulties, if any, to be encountered in the matter of collection;

(3) the complexity of the litigation involved, and the expense and inconvenience in delay necessarily attending it; and

(4) the paramount interest of the creditors..."

See also *River City v. Herpel* (In the Matter of Jackson Brewing Company), 624 F.2d 599 (5th Cir. 1980).

■ The Court has undertaken a preliminary review of the contentions of both parties; and as a result of that preliminary

inquiry, the Court believes that there is a reasonable likelihood that the debtor will prevail in the litigation which is presently pending. There exists a substantial question as to the effect of the warranties and representations concerning American Centennial alleged to have been made in the instant case. These warranties and representations may or may not be enforceable in the context of a judicial sale. However, if said warranties and representations are valid and enforceable, their materiality and effect on the purchase price of American Centennial will remain to be decided.

There will be few problems, if any, in collecting any judgment awarded in the instant case. Providers is in the business of buying and selling insurance companies. They are licensed in 29 states and have capital and surplus in excess of $15 million. Thus, Providers has a sufficient asset base from which to collect a judgment.

While the litigation involved in the instant case is complex, the only risk to the debtor is the incurring of legal expenses. The delay which would result from litigation is not, standing alone, a reason to approve the compromise agreement which is the subject of this Order.

The final area of inquiry by this Court is whether the compromise is in the best interest of creditors of the estate. The settlement would provide for a cash payment of $40,000 plus accrued interest on the $75,000 held in escrow by Cotton, Katz, White & Palmer. The indemnification agreement between Edward J. Birane, Jr., the Insurance Commissioner for the State of Maryland and liquidating receiver of ACLIC, and the debtor also provides that the debtor shall receive at least $40,000 plus accrued interest on the $75,000 currently held in the aforementioned escrow account. On June 30, 1981, this Court ordered that the $40,000 which the Commissioner of Insurance for the State of Maryland had paid into the Registry of the Court was to be invested in any federally insured short-term interest-bearing account. Accordingly, the debtor has no risk of loss from this Court's refusing to approve the compromise agreement except the exposure of legal expense.

The next question to be addressed in determining whether the compromise agreement is in the best interest of creditors concerns the range of recovery which could result from the litigation. The purchase agreement between Providers and the debtor called for a maximum purchase price of $700,000. That purchase price was to be adjusted based on any capital and surplus deficiencies greater than $100,000, the minimum purchase price being $80,000. Until an audit of ACLIC is completed, the deficiency in capital and surplus will remain unknown; and therefore, the purchase price to have been paid by Providers will also remain subject to conjecture.

Therefore, for the above-stated reasons, this Court finds that the debtor's application seeking approval of the proposed settlement between Providers and the debtor is not in the best interest of creditors of the debtor's estate.

IT IS HEREBY ORDERED AND ADJUDGED that the debtor's application seeking approval of the proposed settlement agreement between it and Providers is denied.