## In re BLUE COAL CORPORATION, Debtor.

### In re GLEN NAN, INC., Debtor.

### Bankruptcy Nos. 76–1311, 78–604.

United States Bankruptcy Court, M.D. Pennsylvania.

March 11, 1985.

See also Bkrtcy., 47 B.R. 754.

Eric L. Brossman, McNees, Wallace & Nurick, Harrisburg, Pa., for Robert W. Cleveland, et al. (objectors).

John S. Miles, Washington, D.C., for U.S.

D. Alan Harris, Chicago, Ill., for Comm. of Pa.

John H. Doran, Robert C. Nowalis, Doran & Nowalis, Wilkes-Barre, Pa., for Blue Coal and Glen Nan.

Joseph Solfanelli, Dolphin, Solfanelli & Butler, Scranton, Pa., for McClellan Realty (objectors).

## MEMORANDUM AND ORDER

THOMAS C. GIBBONS, Bankruptcy Judge:

On March 7, 1984, the Trustee, James J. Haggerty, Esq., by and through his counsel, Doran & Nowalis, filed an application to settle certain claims against James J. Durkin, Sr., Anna Jean Durkin, his wife, Edward E. Durkin, James J. Durkin, Jr., Carrier-Truesdale Partnership, Truesdale Enterprises, Inc. and Carrier Coal Company, Inc. Due notice of said application was given to all creditors and all other interested parties and a hearing held thereon on July 9, 1984.

At the hearing held on said application, objections were filed by the McClellan Realty Corporation and Robert W. Cleveland & Sons, Inc., et al. (hereinafter referred to as "The Cleveland Group"). The former were very brief and consisted principally of an allegation that the property settlement with the Durkin Group was unconscionably low in view of the finding by the United States District Court for the Middle District of Pennsylvania that James J. Durkin "intended or believed that he would incur debts beyond the Raymond Group's (of which the Bankrupts, Blue Coal Corporation and Glen Nan, Inc. were subsidiaries) ability to pay as they matured." Citing *United States v. Gleneagles Investment Co., Inc.*, 565 F.Supp. 556, 582 (1983). The latter, Cleveland Group, stated, inter alia, that it had settled various claims asserted by the Trustee, Commonwealth of Pennsylvania, and United States of America by payment of the sum of $5,500,000 of which $2,430,000 was paid to the Blue Coal estate and $70,000 was paid to the Glen Nan estate. Acceptance of this settlement was approved by order of this Court on September 7, 1983.

Paragraph 6 of the Cleveland objections alleges as follows:

"6. The Cleveland Group objects to approval of the proposed settlement by the Court for the following reasons:

(a) The leveraged buyout of the Raymond Group of Companies giving rise to all of the claims asserted by the Creditors against the various parties defendant in the two lawsuits captioned *Haggerty v. Cleveland,* No. 95 of 1979, Court of Common Pleas of Luzerne County, Pennsylvania, and *United States v. Gleneagles Investment Company, Inc.,* No. 80–1424, United States District Court of the Middle District of Pennsylvania, was initiated, structured and planned by James J. Durkin, Sr.;

(b) Federal District Judge Malcolm Muir found in his opinion entered on the case of *United States v. Gleneagles,* 565 F.Supp. 556 (M.D.Pa.1983), that James J. Durkin, Sr., in acquiring and encumbering the assets of the Raymond Group of Companies, had acted with fraudulent intent, within the meaning of 39 P.S. § 357, in hindering and delaying creditors of the Raymond Group of Companies, including Blue Coal Company and Glen Nan, Inc.;

(c) The potential liability of the Durkin Group arising out of the acquisition of the Raymond Group of Companies and the subsequent disposition of corporate assets substantially exceeds $100,000, the settlement figure that has been proposed.

(d) The settlement will preclude any further recourse by the Trustee against the Durkin Group to recover the full amount of the damages suffered by the respective estates.

(e) There has been no showing by the Trustee that a greater recovery cannot be realized from the Durkin Group, that the Trustee has received an adequate accounting either of the assets of the persons comprising the Durkin Group or of the disposition by the Durkin Group of the Blue Coal assets or that the proposed settlement is otherwise adequate or in the best interests of the respective estates."

At the hearing held on July 9, 1984 the court heard evidence in support of the application by the Trustee. Questions were raised by representatives of both objectors and at the conclusion of the hearing, Applicant was directed to supply certain additional financial information to them, to wit, the tax returns for the Durkin Group for the previous ten (10) years, and a copy of a certain Trust Indenture of which Anna Durkin was beneficiary.

A second hearing in this matter was held on January 28, 1985. At that time it was made clear that the information requested in the earlier hearing was furnished to the objectors prior to the resumption of the hearing. Neither of the objectors offered any testimony in support of his position, but failed to withdraw the objections as filed. The Cleveland objectors failed to attend the January 28, 1985 hearing although given adequate notice, nor were they represented by counsel.

It is readily apparent as the Cleveland Group contends that the potential liability of the Durkin Group substantially exceeds the settlement figure that has been proposed, to wit, $100,000. It is perhaps questionable whether the proposed settlement if approved will preclude any further recovery by the Trustee against the Durkin Group to recover the full amount of the damages suffered by the respective estates. It is, however, not true as alleged in Paragraph 6(e), supra, that the Trustee has failed to show that "greater recovery cannot be realized from the Durkin Group or that he has not received an adequate accounting either of the assets on the proposed compromise with the Durkin Group or of the disposition by the Durkin Group of the Blue Coal assets, or finally, that the proposed settlement is otherwise inadequate or in the best interests of the respective estates." On the contrary, arguments to that end put forth by the Cleveland Group were the reasons for the court's direction at the initial hearing in this mat-

ter to furnish additional information to the objectors to enable them to make a more reasoned decision.

The Trustee has exercised the highest diligence in this regard. He has personally and through his counsel made an exhaustive inquiry into the available assets of the principals involved. He has utilized the resources and information made available to him by the Internal Revenue Service to assist him in this investigation. Notwithstanding all of this, the objectors failed to pursue the positions they have outlined and have not offered one credible bit of evidence to the effect that the Trustee's position is ill-advised. In fact, they seem to have abandoned the objections that have been filed by failing to offer any testimony whatever in support thereof. The Trustee, on the other hand, has offered testimony of the intensive efforts of other counsel who have attempted to enforce substantial judgments against the Durkin Group. This testimony also established that unsatisfied judgments are of record reflecting millions of dollars owed by the principals of the Durkin Group. Some of these judgments are in favor of substantial banking institutions with the expertise, personnel and financial assets to go to considerable lengths to obtain money due to them. The Trustee reached this decision to accept the proposed settlement in the face of the knowledge that the Durkin Group had demanded a jury trial of the issues involved. A similar trial held without a jury required 68 trial days, establishing a record in this District for such a suit. All of these factors combine to show that the Trustee has done everything that could be expected of him.

■ Rule 919(a) of the Rules of Bankruptcy Procedure provides: "On application by the trustee ... and after hearing on notice to the creditors ... and to such other persons as the court may designate, the court may approve a compromise or settlement." As pointed out in *Providers Benefit Life Insurance Co. v. Tidewater Group, Inc.* (In re Tidewater Group, Inc.),

"[t]he determination of whether to approve an application to compromise is a matter within the sound discretion of the bankruptcy judge." 13 B.R. 764, 765 (Bankr.N. D.Ga.1981). (citations omitted). Rule 919(a) gives the court broad authority to approve compromises. *Official Creditors' Committee v. Beverly Almont Co.* (In re General Store of Beverly Hills), 11 B.R. 539, 542 (Bankr.App. 9th Cir.1981); *In re Trans East Air, Inc.*, 9 C.B.C. 469, 472 (Bankr.D.Me.1976) ("broad discretion").

The case of *In re Sherman Homes, Inc.*, 28 B.R. 176 (Bankr.D.Me.1983), points out that:

"In deciding whether to approve a compromise, most bankruptcy courts consider the four criteria set forth by the Court of Appeals for the Eighth Circuit in *Drexel v. Loomis*, 35 F.2d 800 (8th Cir.1929). *See, e.g., Tidewater Group, Inc.*, 13 B.R. at 765; *In re W.T. Grant Co.*, 4 B.R. 53, 69 (Bankr.S.D.N.Y.1980). The four *Drexel* factors are:

(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to the reasonable views in the premises.

*Drexel*, 35 F.2d at 806. Finally, the court must consider the principle that 'the law favors compromise.' *Port O'Call Investment Co. v. Blair* (In re Blair), 538 F.2d 849, 851 (9th Cir.1976); *see also In re Trans East Air, Inc.*, 9 C.B.C. at 472 ('settlements are to be encouraged')."

■ Applying the *Drexel* criteria, it is clear that a compromise should be approved unless there is sound legal basis for litigation and likelihood of substantial ultimate benefit to the bankrupt's estate. Moreover, a creditor's objection to a Trustee's application for compromise or settlement is not controlling and will not prevent

approval by the Bankruptcy Court. *In re Sherman Homes, Inc., supra.*

 A court of Bankruptcy has the right to approve settlement in a proper case over objections of some parties so long as settlement is found to be in the best interests of the estate as whole. *In re Flight Transportation Corporation,* 730 F.2d 1128 (8th Cir.1983). As previously stated, whether an application for compromise should be approved is a matter for the sound discretion of the Bankruptcy Court. This should be done after considering all the factors involved if it is in the best interests of the estate. While creditor's objections to compromise are not controlling emphasis is placed on paramount interests of creditors and proper deference will be given to reasonable views set forth in their objections. As the late Judge Galgay stated in the *Matter of W.T. Grant Co.,* 4 B.R. 53 at p. 69:

> "It is clear to this Court ... that the Trustee has apprised himself of 'all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the [controversy] be litigated.' *Protective Committee for Independent Stockholders of TMT Trailer-Ferry, Inc. v. Anderson,* 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968). It is also evident that the Trustee formed 'an educated estimate of the complexity, expense, and likely duration of such litigation, ... and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.' *Ibid.* at 424, 88 S.Ct. at 1163. Also, it is obvious that the Trustee compared 'the terms of the compromise with the likely rewards [or lack thereof] of litigation.' *Ibid.* p. 425, 88 S.Ct. p. 1163, for the Subordinated Debentureholders. Thus, the Trustee has discharged his statutory responsibilities. *In re Blair,* 538 F.2d 849 (9th Cir.1976)."

The foregoing constitutes the findings and conclusions of this Court in accordance with Bankruptcy Rule 7052.