**In re Eldon E. KUHNS a/k/a E.E. Kuhns, Debtor.**

**Bankruptcy No. 86–40561.**

United States Bankruptcy Court, D. Montana.

June 23, 1989.

Joel E. Guthals, Billings, Mont., for debtor and Rocky Mountain Capital Inc.

Jerry N. Stehlik, Shulkin, Hutton & Bucknell, Seattle, Wash., for Unsecured Creditors Committee.

Thomas H. Fain, Williams, Kastner & Gibbs, Bellevue, Wash., for JoAnn Kuhns.

James M. Ragain, Robert C. Reichert, Donald W. Quander, Billings, Mont., for Montana Bancsystem Inc.

Allan G. Holms, pro se.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

Pending before the Court in this Chapter 11 case are two Stipulations and Agreements and Motions proposing settlement of claims and disputes between the Debtor, Rocky Mountain Capital and Allan G. Holms. Hearing on the proposed agreements was held May 16, 1989. The Official Unsecured Creditors Committee (Committee) and Montana Bancsystem, Inc. (MBI) filed objections to the proposed agreements on the grounds the agreements violate § 1125 and Bankruptcy Rule 3001. The Committee and MBI characterize the purchase of claims as bizarre, and as an effort to control Committee activity and seek favorable voting on the Plan of Reorganization.

The facts show that the Debtor is controlling stockholder and President of Rocky Mountain Capital, Inc., a Montana corporation, which has commenced legal action against Allan G. Holms for over 1.9 million dollars for loans and advances made to Holms.[1] Beginning in late 1988, according to Holms, he devised a plan to negotiate with creditors of the Debtor's estate to "purchase" their claims so that Holms could then accomplish a dismissal of the Rocky Mountain action against him in full satisfaction of the claims against the estate. As will be discussed later, that plan was expanded by the Debtor and his wife to protect her interests in an action brought against JoAnn C. Kuhns by the Official Unsecured Creditors Committee. Judgment in that action for over $362,-000.00 has now been entered against JoAnn C. Kuhns. The Debtor claims through his testimony that he had very limited knowledge of the Holms/creditors transactions, yet the evidence reflects that some of the preparation of the assignments of claims were prepared by personnel of Rocky Mountain Capital, which the Debtor controls, long before the present Stipulation was presented to the Court in this case. More important, Holms paid over $270,-000.00[2] in cash for the purchase of claims which total $1,996,693.92. The unsettling factor of Holms' purchase of claims is that the funds came from an insider of the Debtor, being the Debtor's wife.[3] I find this financing arrangement to be suspect because the Debtor testified that Rocky Mountain's chance of recovery on its action against Holms was slim due to Holms' precarious financial condition. Nevertheless, Debtor's wife took non-recourse promissory notes from Holms, without any security, to finance the Holms' scheme. Thus, we have an insider with a personal interest in the estate due to the Unsecured Creditors Committee action providing the financing to settle large claims due from the estate with a person (Holms), who is ostensibly antagonistic to the estate by reason of the large amount owed to the estate by him. The Debtor and Holms would have the Court believe such arrangement was undertaken without the Debtor's knowledge or participation as if he were completely innocent of the Holms' scheme. I do not accept such testimony, for the Debtor, despite his plea to the contrary, had to know of the

---

1. By prior documents filed in this case, the proceeds of the action have been assigned to the Debtor's estate, so that the estate property is involved.

2. Since the hearing on May 16, 1989, Kuhns acquired the share of the Federal Deposit Insurance Corporation in the amount of $134,948.74 for the discounted sum of $65,000.00, which amount is not included in the $270,000.00 figure.

3. Section 101(30) defines an insider to include, if the debtor is an individual, "(i) relative of the debtor * * *".

Holms' scheme through his wife's financing and preparation of assignment documents. Indeed Holms and the Debtor are long time business associates, and that is how Holms now owes the Debtor's alter ego corporation over 1.9 million dollars of unsecured debt. Further, the Debtor's counsel, not Holms, prepared each "Notice of Transfer of Claims" so as to comply with Bankruptcy Rule 3001. This is another example of the cozy relationship between the three parties. Finally, after purchase of the claims, Holms and Debtor negotiated estate assets in the form of three collectible promissory notes to be transferred to Holms in the sum of $77,-910.00. Obviously, it was not enough that the Debtor walked away from the Rocky Mountain law suit, but in order to provide Holms with some cash to repay Debtor's wife or his note for $50,000.00, three valuable assets of the estate are to be transferred to him.

Thus we have a situation where Holms, on the hook for a potential 1.9 million judgment, ends up with estate assets of over $77,910.00, dismissal of the 1.9 million dollar law suit, and personal (and probably uncollectible) notes due Debtor's wife. For this, the Debtor walks away from 2.1 million dollars of claims, which in all likelihood, he could not pay in any event. And Debtor's wife is freed from a $362,-000.00 judgment in return for $315,000.00 of promissory notes due from Holms, who concededly has no assets from which to pay said notes. If Holms does have assets then the Rocky Mountain action should continue. The query is whether any reasonable person, acting in good faith and at arms length, would loan $315,000.00 to a person already in debt to her husband for over 1.9 million dollars under circumstances where collection is dubious at best? I doubt that would happen absent collusion. I find Holms' testimony incredible, and unworthy of belief as well as that of the Debtor. Of course, such finding could not be made as to JoAnn C. Kuhns because she never testified at the hearing. The testimony is incredible because Holms, under any ordinary lending practice, simply would not have been able to secure the claims without insider's help in financing, help which was generated by the Debtor from the outset. As a result, the Stipulations and Agreements have not been proposed or filed in good faith.

Up until the time of Holms' activity, the file in this case reflects the creditors were vigorously objecting to Debtor's proposed reorganization, and some were acting with fervor as members of the Creditors Committee to pursue the voidable transfers from the Debtor to his wife.[4] Through the Debtor's insider, forbearance of legitimate Committee action against the Debtor, approved by this Court, has now been sought. This type of activity smacks of violation of 18 U.S.C. Sec. 152, which provides, inter alia, whoever offers or attempts to offer any money "for acting or forbearing to act in any bankruptcy proceeding" is guilty of a felony. This statute and its predecessor, 44 St.Ct.L.P. 665, Sec. 29, sub. b.(5), 11 U.S.C.A. § 52 (1938), has been on the books for decades. *See, e.g., Sigman Furniture Mfg. v. Massey*, 192 Okl. 436, 137 P.2d 793, 795 (1943), stating:

> "Any arrangement in consideration of a creditor's withdrawal of his opposition to a bankrupt's discharge was illegal as against public policy and the salutary purposes of the insolvent or bankruptcy laws.
>
> \*    \*    \*    \*    \*    \*
>
> The law desires and encourages a full and free exposure and revelation of all the bankrupt's acts, conduct and property. Any agreement whereby a creditor undertakes to keep silent or inactive when his work or deed might arrest the purposes of the bankruptcy proceedings is illegal."

---

4. The decision entered against JoAnn C. Kuhns reflects in part that the Committee received Court approval to commence its litigation because the Debtor refused to seek avoidance of the transfers. That Order has never been rescinded and the action of the Committee, despite its ostensible change in membership due to the Holms/Kuhns scheme, is still to be pressed by counsel for the Committee.

*United States v. Dunkley*, 235 F. 1000 (N.D.Cal.1916), held long ago regarding 18 U.S.C. Sec. 152:

> "The statute in question does not say that one shall not extort money from another as a consideration for acting or forebearing to act unlawfully, but for acting or forebearing to act *at all*." (Emphasis added).

In *Crandall v. Dunham*, 348 Mo. 240, 152 S.W.2d 1044 (1941), the plaintiff, a prepetition creditor, instituted an action against the debtor, stating that before discharge, the debtor agreed, in consideration for the plaintiff not to appear at the first meeting of creditors or object to the discharge, to pay the plaintiff's note. The *Crandall* court, like the *Sigman Furniture Mfg. Co.* case, supra, held the contract void in violation of 18 U.S.C. 152, and therefore unenforceable.

Here, Holms, financed by an insider, agrees with the Debtor to forbear and dismiss the "committee's" actions against the insider, and also bring to a halt major opposition to the Plan of Reorganization. Each proposed agreement, prepared by Debtor's counsel, provides in pertinent part, that Holms, "as holder of the majority of the unsecured claims against the estate, which have been settled by prior stipulation with Kuhns and Rocky Mountain Capital, Ltd., and by this Stipulation, sees no purpose in proceeding with the pending consolidated Adversary Proceeding No. 487/0088 [Official Unsecured Creditors Committee v. JoAnn C. Kuhns and E. E. Kuhns] and shall direct the attorneys for the Unsecured Creditors Committee to dismiss said proceeding with prejudice. Further, Holms shall direct the attorneys for the Unsecured Creditors Committee to withdraw its objection to the Claim of Barrett and Goetz."[5] That latter claim is an administrative claim of over $800,000.00. The other Stipulation proposes the exact term of settlement. The tripartite of the Debtor, the wife and their long time business associate have thus attempted, contrary to the express purposes of 18 U.S.C. Section 152, to make the Official Unsecured Creditors Committee inactive and arrest its diligent efforts against JoAnn C. Kuhns—efforts which the Debtor refused to take and now has fostered a scheme to thwart. I find such scheme was fostered in the fall of 1988, long before the attempted purchase of the Debtor's creditors' claims by Holms. The Debtor seems to forget he is acting as a fiduciary for his unsecured creditors—of which there still remains over $225,000.00 in claims.[6] Section 1107; *In re Technical Knockout Graphics, Inc.*, 833 F.2d 797, 802–03 (9th Cir.1987). (The debtor in possession is not free to deal with the property as it chooses, but rather holds it in trust for the benefit of creditors, just as would a trustee).

I do not disregard that the law favors compromise. *In re Blair*, 538 F.2d 849, 851 (9th Cir.1976). Bankruptcy Rule 9019(a) gives this Court broad authority to approve compromise or settlement of pending or prospective litigation. *In re General Store of Beverly Hills*, 11 B.R. 539, 542 (9th Cir. BAP 1981). The determination of whether to approve an application for compromise and settlement is a matter within the sound discretion of the bankruptcy judge. *Providers Benefit Life Insurance Co. v. Tidewater Group, Inc.*, 13 B.R. 764 765 (Bankr.N.D.Ga.1981). In exercise of that discretion, I find and conclude the proposed Stipulations and Agreements between Holms, Rocky Mountain Capital and Debtor (notably absent is the financier

---

**5.** It is ironic that part of the settlement proposal seeks dismissal of the Committee action against Debtor's wife. Holms at this time is a debtor to the estate. When MBI sought to be a member of the Creditors Committee the Debtor vigorously objected, relying upon case authority that a debtor to the estate is not qualified to be a member of the Unsecured Creditors Committee. *See, Johns–Manville Sales Corp. v. Doan*, 26 B.R. 919 (Bankr.S.D.N.Y.1983). The Court sustained the debtor's position. Now with the cards turned the Debtor places Holms ostensibly in control of the Committee.

**6.** Another claimant, Montana Bank of Billings, seeks authority to file a claim for $250,000.00, which was originally scheduled by the Debtor as contingent. Hearing on that application is set for July 6, 1989, and if approved, will increase the unsecured claims to $475,000.00, exclusive of Holms' claim.

JoAnn C. Kuhns) are a sham and filed as a bad faith scheme to thwart legitimate, on-going efforts of the Unsecured Creditors Committee against JoAnn C. Kuhns in proper administration of this estate. In a parallel situation, *In re Beugen*, 99 B.R. 961 (9th Cir. BAP 1989), the Court held regarding the purchase of claims to insitute litigation against the debtor:

> "* * * we hold that the right to object to a debtor's discharge is not a marketable commodity which may be purchased by one party from another in order to inflict further punishment and discomfort on the debtor."

The purchase of the claims in *Beugen* was made for the purpose of controlling litigation against the debtor through membership on the Unsecured Creditors Committee. Likewise in this case, the purchase of the claims by Holmes was made to stop litigation against Debtor's wife by controlling the Unsecured Creditors Committee. The marketing of claims for such purpose seriously erodes the legitimate function of the Unsecured Creditors Committee in this case, and is thus an improper purpose, thereby making each Stipulation between Holms and Debtor objectionable. I further find that payment of estate assets of $77,-910.00 to Holms is not in the best interest of the creditors of the estate or for value received, since transfer of such notes to Holmes is on a debt which the Debtor claims is uncollectible and therefore valueless. The proposed settlements are nothing more than manipulation of creditors' interests by the Debtor and an insider which this Court will not countenance.

IT IS ORDERED the Stipulation and Agreement and Motion filed April 4, 1989, by Debtor and Allan G. Holms and the Stipulation and Agreement and Motion filed April 4, 1989, by Debtor, Rocky Mountain Capital, Inc. and Allan G. Holms are rejected.