**In re MUNFORD, INC., d/b/a Majik Market, Debtor.**

**Bankruptcy No. A90–00078–SWC.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Dec. 21, 1993.

Susan A. Cahoon, Neal S. Berinhout, Jeffrey J. Toney, Kilpatrick & Cody, Atlanta, GA, for debtor.

David E. Bennett, Vedder, Price, Kaufman & Kammholz, Chicago, IL, Kenneth L. Millwood, Nelson, Mullins, Riley & Scarborough, Atlanta, GA, for Provident Nat. Bank, Boston Safe Deposit and Trust Co. and DFA Investment Dimensions Group, Inc.

R. Matthew Martin, George Wilcox, Jones, Day, Reavis & Pogue, Atlanta, GA, for Shearson Lehman Bros. Inc.

Stephen T. Jacobs, Kathy Donius, Reinhart, Boerner, Van Deuren, Norris & Riesselbach, S.C., Milwaukee, WI, Charles Kidd, Gwen Dorb Holland, David N. Schaeffer, Kidd & Vaughan, Atlanta, GA, for Valuation Research Corp.

G. Edward Cassady, III, Bradley, Arant, Rose & White, Birmingham, AL, for William M. Blount.

C. Murray Saylor, Peyton S. Hawes, Jr., Atlanta, GA, for Russell C. Fellows, James M. Carroll, Joseph W. Hardin and Jay E. Rubel.

Joseph J. Burton, Sr., Burton & Anderson, Atlanta, GA, for Dillard Munford.

Laura F. Nix, Long, Aldridge & Norman, Atlanta, GA, for Creditors Committee.

Edward H. Wasmuth, Jr., Smith, Gambrell & Russell, Atlanta, GA, for Outside Directors which include Winton M. Blount, Herbert J.

Dickson, James L. Ferguson, Robert M. Gardiner, Richard K. LeBlond, II, Andrall E. Pearson and S.B. Rymer, Jr.

Allan M. Pepper, Donald M. Levinson, Kaye, Scholer, Fierman, Hays & Handler, New York City, for James L. Ferguson and Andrall E. Pearson.

### ORDER

STACEY W. COTTON, Bankruptcy Judge.

Before the court is the motion of Munford, Inc. ("debtor") for approval of compromise and settlement with Valuation Research Corporation ("VRC") pursuant to Federal Rule of Bankruptcy Procedure 9019(a). This settlement arises in connection with claims asserted in Adversary Proceeding No. 91–6417, styled *Munford, Inc. v. Dillard Munford, et al.,* in which VRC is a co-defendant. Nonsettling defendants Dillard Munford, Russell C. Fellows, Winton M. Blount, Herbert J. Dickson, James L. Ferguson, Robert M. Gardiner, Richard K. LeBlond, II, Andrall E. Pearson, S.B. Rymer, Jr., James M. Carroll, Joseph W. Hardin, Jay E. Rubel, DFA Investment Dimensions Group, Inc., State Street Bank and Trust Co., Provident National Bank, and Shearson Lehman Brothers, Inc. have objected to the proposed compromise and settlement. Although the underlying suit involves core and non-core matters and defendants have demanded a jury trial, the compromise and settlement of claims of the estate is a core proceeding. 28 U.S.C. § 157(b)(2). After hearing on the motion and objections, and upon consideration of the arguments and briefs of the parties, the court concludes that the motion should be granted.

In its complaint, debtor seeks to avoid transfers of certain property, disallow claims, and recover money damages in excess of $68 million as a result of a leveraged buyout ("LBO") of debtor in 1988. Defendants include debtor's former officers and directors, certain former shareholders and former employees who received monetary benefits from the LBO, and certain financial advisors and consultants who provided services in connection with the LBO.

VRC is a valuation and consulting firm which provided a solvency opinion in connection with the LBO. Debtor contends, among other things, that VRC failed to exercise reasonable care in the issuance of its opinion and that the $75,000 fee paid by debtor constitutes a fraudulent conveyance under O.C.G.A. § 18–2–22(3). VRC denies liability and argues that it owed no duty of care to debtor because its solvency opinion was intended to be relied upon only by the LBO lender. Debtor and VRC have agreed, subject to court approval, to compromise and settle all claims against VRC upon its payment of $350,000 to debtor.

In considering whether to settle with VRC, debtor's counsel reviewed the liability insurance policy and financial statements of VRC. Based on formal and informal discovery, counsel for debtor concluded that it would be difficult, at best, for VRC to respond to any judgment entered against it. This information was then reviewed with the unsecured creditors' committee and debtor's major secured creditor, Citicorp. Further, counsel for VRC confirmed in the hearing that VRC is a service business with 32 employees and virtually no assets, other than its liability insurance policy.

The settlement is conditioned upon the court's entry of an order protecting VRC by permanently barring joint tortfeasors from pursuing contribution or indemnification claims against VRC. *See* Settlement Agreement, Exhibit "A." Debtor contends that authorization for such a protective measure is provided in Federal Rule of Civil Procedure 16(a) and (c) to facilitate settlement. *See Wald v. Wolfson (In re U.S. Oil and Gas Litigation),* 967 F.2d 489, 493–94 (11th Cir. 1992). Debtor contends that the settlement is in the best interests of the estate and its creditors in that the settlement amount constitutes the full amount of VRC's remaining liability insurance coverage with the exception of $50,000 which is reserved for attorney's fees and costs. The committee of unsecured creditors and debtor's major secured creditor support the settlement.

Debtor proposes that the nonsettling defendants be protected by a *pro tanto* or

dollar-for-dollar reduction of the settlement amount from any judgment that may be awarded hereafter against them in the LBO litigation. These nonsettling defendants, however, object to the settlement on grounds that it is not fair, adequate, or reasonable and argue that it should not be approved under Fed.R.Bankr.P. 9019. *See generally United States v. City of Miami,* 614 F.2d 1322, 1330 (5th Cir.1980). They contend that the proposed bar order and judgment reduction provision is inequitable and unfair because it fails to account for VRC's relative degree of fault. Further, it eliminates any cross claims they have against VRC for contribution or indemnity under O.C.G.A. § 51–12–32(a), leaving them without recourse.

Defendants contend that the proposed settlement fails to reasonably reflect VRC's relative fault in connection with debtor's claims. They assert that VRC was specifically retained for the purpose of issuing an opinion as to the solvency of the post-acquisition debtor. Although defendants acknowledge that they never saw or reviewed the VRC opinion, it allegedly was a key factor in the decision to move forward with the LBO's consummation. Therefore, they contend that approval of the proposed settlement would subject the other defendants to a disproportionate share of any damages award while allowing VRC to avoid an adverse judgment for a fraction of the amount for which it would otherwise be potentially liable based on comparative fault. Further, it would allegedly place the risks of settlement solely upon the nonsettling defendants in the event that VRC's degree of fault is determined at trial to have been greater than that for which it was allowed to settle. Because of the pivotal role VRC is alleged to have played in connection with the LBO, they contend that VRC should not be released from the LBO litigation for the relatively minor sum proposed.

Defendants also oppose the *pro tanto* or dollar-for-dollar judgment reduction method as the means of protecting them. Any finding of liability against nonsettling defendants will be dependent on a finding that debtor was insolvent or rendered insolvent by the LBO. Such a finding, however, would alleg-

edly establish VRC's failure to exercise proper care in performing its solvency evaluation. This determination would in turn allegedly support their claims for contribution against VRC but for the proposed bar order. They contend the insufficiency of the dollar-for-dollar reduction mechanism is clearly demonstrated by the relatively minimal effect of reducing a potential $68 million judgment by the mere sum of $350,000.

To adequately protect their interests, defendants urge that at a minimum, the settlement should provide that any judgment which debtor obtains against them should be reduced by VRC's pro rata share of the damages. Further, if grounds for indemnification are proven, the full amount of such recovery should be reduced from such judgment. Therefore, each co-defendant's share of any damage award should be fixed in reference to the relative fault of that particular defendant, including VRC, as determined at trial.

Defendants also assert that the reduction in damages should be the greater of the settlement amount (dollar-for-dollar) paid by VRC or an amount commensurate with VRC's proportionate degree of liability. Additionally, defendants insist that VRC should be obligated to withdraw with prejudice its pending cross claims and be barred from asserting any claims against them. *See e.g.* O.C.G.A. § 51–12–32. VRC agreed through counsel at the August 2 hearing to relinquish its claims for contribution or indemnity. This was later confirmed in writing by letter from VRC counsel to the court dated October 18, 1993.

In reviewing a settlement between a plaintiff and fewer than all co-defendants, the court must carefully consider its fairness to the nonsettling parties as it affects their substantive rights. *See Cullen v. Riley (In re Masters Mates & Pilots Pension Plan and IRAP Litigation),* 957 F.2d 1020, 1025–26 (2d Cir.1992) (ERISA class action). A court should not approve a settlement bar provision "unless it is narrowly tailored and preceded by a judicial determination that the settlement has been entered into in good

faith and that no one has been set apart for unfair treatment." *Id.* at 1031.

■ The Eleventh Circuit Court of Appeals has upheld the use of settlement bar orders in class action securities litigation. It has not, however, issued a definitive opinion on the appropriate method of calculating the offset to be applied as a means of protecting nonsettling defendants from any judgment subsequently obtained against them. *See U.S. Oil and Gas Litigation, supra,* 967 F.2d at 493–94; *cf. Great Lakes Dredge & Dock Co. v. Tanker Robert Watt Miller,* 957 F.2d 1575, 1580–81 (11th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 484, 121 L.Ed.2d 388 (1992).[1]

■ Bar provisions, entered in connection with a settlement between a plaintiff and fewer than all co-defendants, are justified in their tempering of the settlement disincentive created by the prospect of continuing potential liability based on contribution claims. As observed in *U.S. Oil and Gas Litigation, supra,* courts are authorized under Fed.R.Civ.P. 16(a) and (c) to facilitate settlement in all types of litigation in addition to complex matters such as class action lawsuits. 967 F.2d at 493. Such settlements increasingly incorporate bar orders because they promote settlements by enabling settling litigants to limit the risks of settlement. *Id.* at 494; *see also Kovacs v. Ernst & Young (In re Jiffy Lube Sec. Litigation),* 927 F.2d 155, 160 (4th Cir.1991); *on remand,* 772 F.Supp. 890 (D.Md.1991) (shareholder class action bar order proper, but case remanded for specification of judgment setoff method to be used); *Franklin v. Kaypro Corp. (In re Kaypro Corp. Sec. Litigation* ), 884 F.2d 1222 (9th Cir.1989), *cert. denied,* 498 U.S. 890, 111

S.Ct. 232, 112 L.Ed.2d 192 (1990). As noted by the Eleventh Circuit, bar orders are important because settling defendants ". . . buy little peace through settlement unless they are assured that they will be protected against codefendants' efforts to shift their losses through cross-claims for indemnity, contribution, and other causes related to the underlying litigation." *U.S. Oil and Gas Litigation, supra,* 967 F.2d at 494.

Bar order provisions restricting contribution rights as a component of such settlements have also been allowed in non-class action contexts. For instance, the Fifth Circuit, in a multi-party, consolidated diversity suit based on claims arising from personal injuries, approved a settlement and entry of a judgment prohibiting nonsettling defendants from asserting third party claims against the settling defendants in accordance with Fed.R.Civ.P. 14. *See McDonald v. Union Carbide Corp.,* 734 F.2d 182 (5th Cir. 1984) (competing judgment reduction methods not discussed). Nonsettling parties were protected through their right to assert a plea for a reduction in liability as a result of the settlement. Moreover, such a settlement was approved in an action with multiple party defendants based on securities laws violations, state law fraud, and negligent misrepresentation. *See TBG Inc. v. Bendis,* 811 F.Supp. 596, 602–03 (D.Kan.1992); *motion for reconsideration denied,* 813 F.Supp. 766 (1993). The real issue, as stated in *Bendis,* is the fairness of the settlement based on the judgment reduction method to be used. 811 F.Supp. at 602.

Similarly, settlement bar rules have been entered in the context of FDIC litigation. *See Federal Sav. and Loan Ins. Corp. v.*

---

**1.** In *Great Lakes,* the Eleventh Circuit, noting the singular historical development of comparative fault in maritime cases and its adoption of a *pro tanto* rule in *Self v. Great Lakes Dredge & Dock Co.,* 832 F.2d 1540 (11th Cir.1987), *reh'g denied, en banc,* 837 F.2d 1095 (1988), *cert. denied,* 486 U.S. 1033, 108 S.Ct. 2017, 100 L.Ed.2d 604 (1988), rejected a settlement bar rule. 957 F.2d at 1580–83. In *Self,* the court concluded that a plaintiff could recover its damages in full from a nonsettling defendant, less the amount paid in settlement, despite the fact that the nonsettling defendant's percentage fault was less than that of the settling defendant. *Self,* 832 F.2d at 1548.

Subsequently, in *Great Lakes,* the court held that contribution rights should be maintained for any nonsettling defendant who has paid more than his equitable share of a plaintiff's claim. With the loss of pro rata reductions based on *Self,* such a ruling was necessary to preserve the liability distribution scheme based on comparative fault which applied in admiralty cases. *Great Lakes,* 957 F.2d at 1579–81. As later observed by the court in *U.S. Oil and Gas Litigation,* however, its ruling in *Great Lakes* should be limited to the unique context of maritime law. 967 F.2d at 494 n. 3.

*McGinnis, Juban, Bevan, Mullins & Patterson, P.C.*, 808 F.Supp. 1263, 1276–78 (E.D.La.1992); *see also Federal Deposit Ins. Corp. v. Geldermann, Inc.*, 975 F.2d 695, 698 (10th Cir.1992) (noting that contribution bar orders are frequently upheld, but disapproving settlement barring nonsettling parties from asserting contribution action against nonparties not before the court); *but see Comeau v. Rupp*, 810 F.Supp. 1127, 1164–65 (D.Kan.1992).[2] Settlement bar rules have also been applied in actions based on state law. *See e.g., Alumax Mill Products, Inc. v. Congress Fin. Corp.*, 912 F.2d 996, 1008 (8th Cir.1990) (applying Minnesota state law); *Stefano v. Smith*, 705 F.Supp. 733, 737–38 (D.Conn.1989) (applying comparative fault rule as means for precluding contribution action against settling defendant in context of Connecticut state law).

■■■■ Judgment reduction provisions serve as an alternative to contribution after entry of a bar order and provide a means for fairly compensating nonsettling defendants for the loss of contribution or indemnity claims. *Masters Mates, supra*, 957 F.2d at 1028. In addition, they advance the underlying goals of contribution by preventing a settling defendant from escaping his share of responsibility. Three basic methods are used in structuring the apportionment of damages in a multi-defendant action in which some but not all defendants have agreed to settle. Under these methods, the court determines an appropriate setoff from any judgment obtained against nonsettling defendants to protect them in view of the loss of their rights to contribution. The main difference between these judgment deduction rules is how they allocate settlement risks.

■■■■ Under the *pro tanto* or dollar-for-dollar method, any judgment against nonsettling defendants is reduced by the amount of the settlement, regardless of the settling defendant's relative fault. The nonsettling defendants pay the remainder. This method places the risk of a deficiency upon the non-

settling defendants in the event the settling defendant pays an amount which is less than his relative degree of fault would otherwise support. The underlying rationale is that settlement is to be encouraged but not at the expense of the plaintiff's right to be made whole. A fairness hearing is required for approval. *See generally Jiffy Lube, supra*, 927 F.2d at 160; *MFS Municipal Income Trust v. American Medical Int'l, Inc.*, 751 F.Supp. 279, 282 (D.Mass.1990); *see also In re Drexel Burnham Lambert Group Inc.*, 146 B.R. 98, 104 (Bankr.S.D.N.Y.1992).

■■■■ Next, under the proportionate or relative fault method, the judgment is reduced by an amount based on the settling defendant's relative culpability. *See e.g., Franklin, supra*, 884 F.2d at 1230; *United States Fidelity & Guaranty Co. v. Patriot's Point Dev. Authority*, 772 F.Supp. 1565, 1573 (D.S.C.1991). Under this method, the settlement amount is not relevant and the risk of a bad settlement is borne by the plaintiff. If plaintiff settles for an amount less than a particular defendant's fault would otherwise support, the nonsettling defendants still remain liable only for the amount of damages commensurate with their relative degree of fault. Further, it may also result in the reduction of an overall judgment by more than the amount actually recovered in the event the settling defendant is insolvent. Of course, if the settling defendant overpays, the plaintiff may obtain a higher award than if damages were fixed for all defendants at trial. In this instance, the underlying rationale is that settlements are to be encouraged but not at the expense of contribution rights among co-defendants. *Franklin, supra*, 884 F.2d at 1229.

■■■■ The third method is the capped comparative fault. Under this method, which the nonsettling defendants urge upon the court, a judgment is reduced by the greater of the settlement amount or the settling defendant's relative share of liability or fault. This method keeps the burden on the plaintiff to

---

**2.** In *Comeau*, the court held that in the absence of an actual, live controversy concerning the restriction or deprivation of contribution rights that had not yet been asserted, it lacked jurisdiction to determine the issue. 810 F.Supp. at

1165. By concentrating on the alleged hypothetical nature of such rights, however, this conclusion seems to approve the belated assertion of such claims which in turn could inhibit settlements.

obtain a shrewd and informed settlement. *First Federal Sav. & Loan Ass'n of Pittsburgh v. Oppenheim, Appel, Dixon & Co.,* 631 F.Supp. 1029 (S.D.N.Y.1986); *cf. MFS, supra,* 751 F.Supp. at 284–85.

Risk allocation analysis may be influenced by the special nature of certain litigation. For example, in the context of FDIC litigation, courts have recognized the unique character and role of the FDIC as a plaintiff and the public interest in seeing that it is made whole. The *pro tanto* method better serves such policy interests and also creates a situation in which settlement is perceived as being more likely than in a proportionate fault scenario. The risk of settlement is placed on the defendants as opposed to the FDIC as plaintiff. Although fairness to the nonsettling defendants is important, it is not the controlling consideration in such situations. *See McGinnis, supra,* 808 F.Supp. at 1278–79; *cf. In re NBW Commercial Paper Litigation,* 807 F.Supp. 801, 807–810 (D.D.C.1992) (placement of settlement risks on FDIC as a party defendant counseled against adopting *pro tanto* allocation, especially in absence of evidence pertaining to parties' relative culpability).

Similarly, in *Self, supra,* 832 F.2d at 1545–48, the *pro tanto* method of apportioning damages between settling and nonsettling maritime tortfeasors was adopted largely in response to the U.S. Supreme Court's emphasis on the right of a seaman-plaintiff to be made whole in personal injury litigation through joint and several liability. *See Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 260–61 nn. 8 and 9, 268–69, 271 n. 30, 99 S.Ct. 2753, 2756–57 nn. 8 and 9, 2760–61, 2762 n. 30, 61 L.Ed.2d 521, *reh'g*

denied, 444 U.S. 889, 100 S.Ct. 194, 62 L.Ed.2d 126 (1979).[3] *See also Myers v. Griffin–Alexander Drilling Co.,* 910 F.2d 1252, 1256 (5th Cir.1990).[4] In allocating risk, the governing rule from *Edmonds* appears to be that any inequity resulting from the realization of a plaintiff's damages award should be borne by the joint tortfeasors rather than the injured plaintiff. *See Self, supra,* 832 F.2d at 1546.

Based on the above reasoning, the court concludes that approval of a bar order in connection with the proposed settlement is appropriate. Bar orders encourage settlement and provide certainty to litigants while enabling them to reduce litigation costs. Such orders have been used increasingly in other contexts and there is no reason why such orders should not also be applicable to litigation in a bankruptcy case, since Fed.R.Civ.P. 16 is specifically made applicable to bankruptcy cases pursuant to Fed. R.Bankr.P. 7016. This court concludes that the *pro tanto* method of judgment reduction adequately protects the interests of nonsettling defendants. This recognizes that the risks of settlement should reasonably be borne by the defendants while the injured plaintiff should be made whole.

Whether to approve an application to compromise and settle is within the sound discretion of the court. *Providers Benefit Life Ins. Co. v. Tidewater Group, Inc. (In re Tidewater Group, Inc.),* 13 B.R. 764, 765 (Bankr.N.D.Ga.1981) (citing *Drexel v. Loomis,* 35 F.2d 800 (8th Cir.1929)). The courts have enunciated four criteria to be considered as follows: (1) the probability of success; (2) difficulties, if any, of collection; (3) the complexity of litigation and expense and

---

**3.** *Edmonds* did not involve a settlement between a plaintiff and one of several co-defendants. Instead, an injured longshoreman was barred by statute from suing his stevedore-employer for full damages in consideration for a guaranteed limited recovery regardless of fault. He was allowed to recover full damages, however, from the shipowner who was only partially responsible for the accident. The Court concluded that Congress, by imposition of a proportionate fault rule, had not intended to change the admiralty rule that a shipowner can be liable for all damages. Otherwise, economic burdens would be improperly shifted to the injured plaintiff if, for example, the

stevedore's relative fault was greater than the proportion of statutory compensation to actual damages. 443 U.S. at 268–71, 99 S.Ct. at 2760–62.

**4.** The Fifth Circuit, however, has not conclusively established such a rule in the maritime context. *See e.g., Hardy v. Gulf Oil Corp.,* 949 F.2d 826, 835 nn. 14 and 15 (5th Cir.1992); *see also McDermott, Inc. v. Clyde Iron,* 979 F.2d 1068, 1079–80 (5th Cir.1992), *reh'g, en banc, denied,* 985 F.2d 555, *cert. granted, in part,* —— U.S. ——, 113 S.Ct. 3033, 125 L.Ed.2d 721 (1993).

inconvenience in delay; and (4) the best interests of creditors. *See Tidewater Group,* 13 B.R. at 765.

In considering likelihood of success and the complexities of litigation, there exists a substantial question as to the liability of VRC. There has been a significant amount of discovery in this proceeding and discovery is now closed. Settlement has been and is open to all parties. While the nonsettling defendants have elected to go to trial, VRC has decided to forego its right to trial and has agreed to settle. VRC has offered to pay in settlement substantially all of its remaining asset of meaningful value in the form of its liability insurance policy. A settling defendant's inability to pay is a relevant consideration in not adopting a relative fault reduction because of the risk visited upon the plaintiff. *See e.g., NBW, supra,* 807 F.Supp. at 809; *In re Nucorp Energy Sec. Litigation,* 661 F.Supp. 1403, 1408–10 (S.D.Cal.1987).

Defendants argue in response, however, that because VRC may acquire more value in the future, fairness demands that it be required to pay an amount which is at least commensurate with its proportionate fault. By doing so, however, the probability that VRC will not obtain or generate such value would be borne solely by debtor. Debtor has elected to settle with VRC for a sure $350,000. The nonsettling defendants' suggestion that VRC may someday possess the ability to pay more is at best speculative and only seeks to shift such speculative risk to debtor.

Their potential contribution/indemnity claims arise from the solvency evaluation of debtor prepared by VRC in connection with the LBO. VRC alleges, however, that by its express terms the solvency opinion was limited in scope and only intended to be relied upon by the LBO lender. The opinion letter contained disclaimers and conditions prohibiting any use of VRC's analysis other than by its intended recipient. Further, none of the defendants saw or reviewed the opinion prior to consummation of the LBO.

Notwithstanding the foregoing, defendants assert that VRC owed the nonsettling defendants a duty of care in issuing its favorable opinion. Further, because it was specifically engaged to evaluate and provide an opinion as to debtor's post-transaction solvency, VRC allegedly bears a greater share of fault in this matter. Accordingly, if debtor is found to have been rendered insolvent by the LBO and the nonsettling defendants are found liable, then VRC may have breached its alleged duty by providing a flawed opinion upon which other parties relied in approving or consummating the LBO.

Although strict contractual privity is no longer necessary under Georgia law to maintain a claim based on professional malpractice or negligence, such liability does not extend to a person or class of persons whose presence is merely foreseeable. Instead, professional liability extends to "... those persons, or the limited class of persons who the professional is actually aware will rely upon the information he prepared" and, such liability may be disclaimed. *See Badische Corp. v. Caylor,* 825 F.2d 339, 341 (11th Cir.1987) (quoting *Badische Corp. v. Caylor,* 257 Ga. 131, 356 S.E.2d 198 (1987)); *Robert & Co. Associates v. Rhodes–Haverty Partnership,* 250 Ga. 680, 682, 300 S.E.2d 503 (1983); *Samuelson v. Lord, Aeck & Sergeant, Inc.,* 205 Ga.App. 568, 570–71, 423 S.E.2d 268 (1992); *Driebe v. Cox,* 203 Ga.App. 8, 11, 416 S.E.2d 314 (1992). Justifiable reliance is defined in terms of the persons for whom the information was intended and whether it was made for the purpose of inducing reliance and action thereon. In the present case, there are substantial disputes concerning to whom the opinion was issued, the effect of VRC's disclaimer of liability, and the right of reliance since none of the defendants saw or reviewed the VRC opinion prior to closing and consummating the LBO. Thus, the potential for liability is at best uncertain.

At the fairness hearing, no one challenged the economic reasonableness of the settlement. The record indicates that VRC has very limited assets and that the settlement payment represents its only substantial asset. Defendants have neither disputed this fact nor shown that it can pay more. Under the circumstances, the likelihood of recovery

due to VRC's financial condition is very doubtful.

Based upon the foregoing reasoning, the court concludes that the proposed compromise and settlement is fair to the nonsettling defendants and is fair, equitable and in the best interests of this estate. The settlement has been entered into in good faith, and there is no evidence that VRC has been accorded unfair treatment. The settlement is, therefore, approved with the nonsettling defendants' interests to be protected by the *pro tanto* or dollar-for-dollar reduction in any judgment that may be rendered jointly against the nonsettling defendants in the amount of $350,000.

Finally, the nonsettling defendants argue that this court lacks subject matter jurisdiction to enter a final judgment as to their state law contribution claims which are non-core and which are not pending. Normally, claims between third parties, which are not related to the bankruptcy, are too tenuous for bankruptcy jurisdiction. *In re Lemco Gypsum, Inc.,* 910 F.2d 784 (11th Cir.1990). However, debtor's cause of action is property of the estate within the broad scope of 11 U.S.C. § 541(a). This section provides that debtor's estate, with certain non relevant exceptions, is comprised of all forms of property, including causes of actions. Under the Bankruptcy Code, jurisdiction is vested in the district court. Pursuant to 28 U.S.C. § 157(a), the district court has referred, with certain exceptions, all cases or proceeding to the bankruptcy judges of this court. Under 11 U.S.C. § 105(a), once jurisdiction is established, the bankruptcy court is authorized to issue such order, process or judgment as is necessary or appropriate to carry out the provisions of the Bankruptcy Code. *In re Johns–Manville Corp.,* 801 F.2d 60, 63 (2d Cir.1986); *In re Davis,* 730 F.2d 176, 183–84 (5th Cir.1984).

In this adversary, debtor asserts both core and non core matters. The nonsettling defendants' alleged contribution/indemnity claims arise out of the same operative facts. As such, their claims are incident to, arise out of, and are related to claims asserted by debtor against the defendants. The outcome of these claims could have an effect on this debtor's estate by altering debtor's rights, liabilities, options, and freedom of action. In fact, defendants' objections seek to limit debtor's rights, options, and freedom of action to settle with VRC. First, if sustained, defendants' objections would deny debtor the $350,000 recovery available or to become available to the estate. Next, they would force debtor to proceed to trial when the economic risk and burden of expense would potentially result in little or no recovery for the estate. Therefore, the court concludes that these defendants' claims have a sufficient nexus to the estate claims to give this court jurisdiction to approve debtor's proposed compromise and settlement with VRC and to bar the nonsettling defendants' contribution and indemnity claims against VRC. *Lemco Gypsum, supra,* 910 F.2d at 788; *Johns–Manville,* 801 F.2d at 63–4; *Davis,* 730 F.2d at 183. Accordingly, it is

**ORDERED** that debtor's motion for approval of compromise and settlement with Valuation Research Corporation as to those claims asserted in Adversary Proceeding No. 91–6417 is **granted,** and said compromise and settlement between debtor and Valuation Research Corporation is **approved,** and the nonsettling defendants' objections are **denied;** and it is

**FURTHER ORDERED** that Dillard Munford, Russell C. Fellows, Winton M. Blount, Herbert J. Dickson, James L. Ferguson, Robert M. Gardiner, Richard K. LeBlond, II, Andrall E. Pearson, S.B. Rymer, Jr., James M. Carroll, Joseph W. Hardin, Jay E. Rubel, DFA Investment Dimensions Group, Inc., State Street Bank and Trust Co., Provident National Bank, and Shearson Lehman Brothers, Inc. ("nonsettling defendants") are permanently barred, restrained, and enjoined from asserting, commencing or continuing any and all claims against Valuation Research Corporation for partial, comparative equitable or total indemnity or contribution, however denominated, for or on account of any claim alleged by debtor in its complaint, as amended, in said adversary proceeding. As a result of this bar order, any and all such claims by said nonsettling defendants, against Valuation Research Corporation are

barred, extinguished, satisfied, discharged, and/or otherwise unenforceable. Provided, however, that to protect the nonsettling defendants from the consequences of this bar order, the court directs that any judgment recovered by plaintiff debtor in said adversary proceeding against nonsettling defendants shall be reduced by the amount of $350,000 paid by Valuation Research Corporation in connection with the settlement of claims in this litigation. This bar order does not affect the nonsettling defendants' rights against each other; and it is

**FURTHER ORDERED** that Valuation Research Corporation is permanently barred, restrained, and enjoined from asserting, commencing or continuing any and all claims against Dillard Munford, Russell C. Fellows, Winton M. Blount, Herbert J. Dickson, James L. Ferguson, Robert M. Gardiner, Richard K. LeBlond, II, Andrall E. Pearson, S.B. Rymer, Jr., James M. Carroll, Joseph W. Hardin, Jay E. Rubel, DFA Investment Dimensions Group, Inc., State Street Bank and Trust Co., Provident National Bank, and Shearson Lehman Brothers, Inc. ("nonsettling defendants") for partial, comparative equitable or total indemnity or contribution, however denominated, for or on account of any claim alleged by debtor in its complaint, as amended, in said adversary proceeding. As a result of this bar order, any and all such claims by said Valuation Research Corporation against the nonsettling defendants are barred, extinguished, satisfied, discharged, and/or otherwise unenforceable; and it is

**FURTHER ORDERED** that the debtor and Valuation Research Corporation are authorized to take all necessary action to consummate said compromise and settlement.

The clerk is directed to serve a copy of this order upon debtor's counsel and counsel for each of the defendants in Adversary Proceeding No. 91–6417.

IT IS SO ORDERED.